UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

**WILLIAM JEFFREY KARN,**

      Plaintiff

v.

      **Case No.  8:16-CV-03261-GJH**

**PTS OF AMERICA, LLC,**

      Defendant

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PTS OF AMERICA, LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, PTS of America, LLC ("Defendant" or "PTS"), by and through undersigned counsel, hereby submits this Memorandum of Law in Support of its Partial Motion to Dismiss Plaintiff's Complaint.  PTS moves for dismissal of Counts II, III, IV, V, VI, VII, and VIII on the grounds that Plaintiff has failed to state causes of action upon for which relief can be granted, and thus such Counts must be dismissed, with prejudice.

## INTRODUCTION

Plaintiff filed the current action against PTS, alleging numerous causes of action arising out of his transportation from Montgomery County, Maryland to South Carolina, by PTS, in connection with a South Carolina criminal charge against Plaintiff for failure to timely pay child support.  Plaintiff alleges that the seizure/arrest, as well as the conditions of his confinement during transportation, from December 23, 2015 through December 31, 2015.[1]  were unlawful, violating federal civil rights statutes, state common law, and the Maryland Declaration of Rights. To that end, Plaintiff has pursued causes of action for Negligence – Count I; Intentional

---

[1] Plaintiff identifies the transportation journey as a "nine day ordeal." *Compl.* ¶ 13.

Infliction of Emotional Distress – Count II; Negligent Hiring, Training, and Supervision – Count III; False Imprisonment – Count IV; 42 U.S.C. § 1983, Unlawful Arrest, Seizure, Detention – Count V; 42 U.S.C. § 1983, Mistreatment in Custody – Count VI; Violations of Article 24 and 26 of the Maryland Declaration of Rights (Excessive Force) – County VII; and Violations of Articles 24 and 26 of the Maryland Declaration of Rights (Loss of Liberty) – Count VIII.

As is demonstrated below, Counts II, III, IV, V, VI, VII, and VIII must be dismissed for failure to state a claim upon which relief can be granted. The Plaintiff has failed to allege facts sufficient to support the identified causes of action, and/or has pursued causes of action that are inapplicable to PTS as a Defendant.

## FACTS[2]

On or about December 9, 2015, Plaintiff was arrested in Montgomery County, Maryland for failure to pay timely child support in Horry County, South Carolina. *Compl.* ¶ 8. Plaintiff waived extradition to South Carolina in connection with said arrest. *Compl.* ¶ 9. Plaintiff's arrest in Montgomery County, Maryland related to a fugitive warrant and the corresponding fugitive from justice charge. See Exhibit 1, Docket for District Court for Montgomery County, Maryland, Case No. 5D00348633.[3]

On December 23, 2015, PTS employees arrived at the Montgomery County facility to transport Plaintiff to South Carolina in connection with the fugitive warrant and Plaintiff's waiver of extradition in connection therewith. *Compl.* ¶ 11.

---

[2] Pursuant to Federal Rule of Civ. Proc. 12(b)(6), Plaintiff's alleged facts in the Complaint are accepted as true for purposes of this Motion, and Plaintiff's claims fail nevertheless. However, in the event the matter proceeds, Defendant PTS will vigorously dispute many of the facts alleged in the Complaint.

[3] The Court may consider the information within the District Court of Maryland file without converting the current Motion from a Motion to Dismiss as a matter of judicial notice of public records. *Ademiluyi v. PennyMac Mtg. Investment Trust Holdings, LLC*, 929 F.Supp.2d 502, 512 (D. Md. 2013).

Plaintiff alleges that PTS' employees placed ankle cuffs around Plaintiff's legs, ran a chain link around his midsection, and secured handcuffs on his wrists. The handcuffs caused extreme pressure on Plaintiff's wrists, nerves, tissue, and bones, and that despite Plaintiff's complaints about the pressure on his wrists, PTS' guards ignored such complaints. *Compl.* ¶¶ 12-15.

Plaintiff makes several allegations regarding the conditions during transportation, including the following:

- The Plaintiff sat on eight-inch (8") metal benches with his knees pressed up against a metal divider. *Compl.* ¶¶ 16, 28.

- The guards drove in eighteen (18) hour shifts and that the Plaintiff was at times in the van for thirty-six (36) hours, while not belted or restrained in any way (other than the restraints identified above), causing the prisoners to be thrown about, and thus rendering Plaintiff and other prisoners sleep-deprived. *Compl.* ¶¶ 29-31.

- Plaintiff received food roughly every six-to-eight (6-8) in the form of a McDonald's hamburger and one (1) twelve ounce (12 oz.) bottle of water. *Compl.* ¶ 33. On at least one occasion, Plaintiff was not fed or provided water for nearly twelve hours. *Compl.* ¶ 34.

- During the time spent in the van, there was no way for the Plaintiff to urinate or to move his bowels properly. This resulted in Plaintiff urinating into his empty water bottle, which was difficult given the restraints, leading Plaintiff to urinate and defecate on himself and on the floor of the van. *Compl.* ¶¶ 46-48.

- Plaintiff further alleges that Plaintiff was not allowed to bathe or change clothing and that this, combined with the other conditions of the van caused the odor in the van to be horrific. *Compl.* ¶¶ 53-54.

- Plaintiff alleges that PTS' guards utilized pepper spray in the rear compartment of the van to control unruly conduct of the prisoners therein and that Plaintiff was impacted by the pepper spray, causing pain for several hours, until the burning ended. *Compl.* ¶¶ 58-59.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint or cause of action that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). To satisfy the pleading standard applicable under Rule 8 of

the Federal Rules of Civil Procedure, and to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This requires plaintiffs to "nudge[] their claims across the line from conceivable to plausible." *Id.*  *See also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphasis in original).

Application of the plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). While the plausibility standard is "not akin to a probability requirement," a plaintiff is required to "articulate facts . . . that show that the plaintiff has stated a claim entitling him to relief." *Iqbal,* 556 U.S. at 677-678 (quoting *Twombly,* 550 U.S. at 557).  As previously explained by this Court:

> Under the plausibility standard, a complaint must contain more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Well-pleaded factual allegations contained in the complaint are assumed to be true even if they are doubtful in fact, but legal conclusions are not entitled to judicial deference. Thus, even though Rule 8(a)(2) marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.

*Walters v. McMahen,* 795 F. Supp. 2d 350, (D. Md. 2011) (internal citations, quotations and alterations omitted). Further, for the purposes of a motion to dismiss, a court does not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Venev v. Wyche,* 293 F.3d 726, 730 (Fourth Cir. 2002).  Thus, the plausibility requirement is only met "when the plaintiff pleads *factual* content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (emphasis added). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 677-678 (internal quotations and brackets omitted).

With respect to any surviving well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679. In this regard, "[e]ven though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (Fourth Cir. 2009).

## ARGUMENT

1. **Count II – Intentional Infliction of Emotional Distress**[4]

Plaintiff alleges PTS breached its duty to refrain from inflicting cruel and unusual punishment on the Plaintiff through a series of actions and inactions that were severely damaging to Plaintiff during transport from the Seven Locks Detention Center in Maryland, to the J. Rueben Long Detention Center in South Carolina. *Compl.* ¶ 76.

To sustain a claim for intentional infliction of emotional distress, the Plaintiff must prove that: (1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 566 (1977). "Each of these elements must be pled and proved with specificity. It is not enough for a

---

[4] Plaintiff does not contend that any substantive law other than Maryland applies. Furthermore, Plaintiff alleges Maryland claims expressly arising out of the Maryland Declaration of Rights. Thus, to the extent state law applies, Maryland law is addressed. PTS reserves the right to assert different law applies as facts become known.

plaintiff merely to allege that they exist; he must set forth facts that, if true, would demonstrate that they exist....[D]efficiency in any one [element] is fatal." *Foor v. Juvenile Servs.,* 78 Md. App. 151, 175, *cert. denied,* 316 Md. 364 (1989). The cause of action is disfavored. In addition, "it should be emphasized that in Maryland, 'the tort of intentional infliction of emotional distress is rarely viable.'" *Alcalde v. Deaton Specialty Hosp. Home, Inc.,* 133 F. Supp. 2d 702, 712 (D. Md. 2001) (quoting *Farasat v. Paulikas,* 32 F. Supp. 2d 244, 247 (D. Md. 1997)). "Moreover, the initial determination of whether these elements have been satisfied rests with the trial judge." *Hamilton v. Ford Motor Credit Co.,* 66 Md. App. 46, 58, *cert. denied* 306 Md. 118 (1986), *see also Harris,* 281 Md. at 569 (whether elements of tort have been met is matter of law for a court to decide).

To satisfy the first element of a cause of action for intentional infliction of emotional distress, the plaintiff must prove that the defendant bore an animus toward the plaintiff and specifically desired the harm to occur. "[P]laintiffs are required to show [animus] to sustain a cause of action for intentional infliction of emotional distress in Maryland. *Alcalde,* 133 F. Supp. 2d at 712 (citing *Foor,* 78 Md. App. at 175). "To meet the 'intentional or reckless' criterion of the first element, the plaintiff must allege and prove that the defendant either *desired* to inflict severe emotional distress, *knew* that such distress was *certain or substantially certain* to result from his conduct, or acted recklessly in deliberate disregard *of a high degree of probability* that the emotional distress will follow." *Foor,* 78 Md. App. at 175 (emphasis in original). The Maryland Courts that have considered the issue of animus have held that "the issue is whether defendants desired [the plaintiff] to suffer severe emotional distress." *Alcalde,* 133 F. Supp. 2d at 712.

In *Alcalde v. Deaton Specialty Hosp. Home*, the United States District Court for the District of Maryland, applying Maryland law, held that the plaintiff's claim for intentional infliction of emotional distress failed as a matter of law to meet the "animus" requirement because she was unable to allege facts that strongly indicated that the defendant rehabilitative hospital "desired [the decedent] to suffer severe emotional distress." *Id.* at 712-13.

The defendants in *Alcalde* clearly were aware of the decedent's communication difficulties, having "documented communication difficulties between Ms. Alcalde and various hospital staff members, including nurses, therapists, doctors and social workers." *Id.*

> [D]efendants ... documented the need to develop better communication strategies, as Ms. Alcalde seemed "depressed" when she did not understand communications. Defendants allegedly cited "impaired communication" as a problem and acknowledged that sign-language interpreter services were necessary to resolve their inability to communicate with Ms. Alcalde. Notwithstanding these observations, no interpreters were ever provided during Ms. Alcalde's 89-day hospitalization.

*Id.* 706.

The court completely rejected the plaintiff's claim for intentional infliction of emotional distress, despite the defendant's clearly negligent conduct, because the plaintiff failed to allege facts that strongly indicated that the defendants "desired Ms. Alcalde to suffer severe emotional distress." *Id.* at 713. The court stated:

> In the instant case, **the amended complaint fails to set forth facts which show animus**. Instead the amended complaint merely contains a conclusory statement that 'Defendants acted maliciously, with intent to cause emotional distress and/or with reckless disregard for the probability of causing emotional distress.' Yet, plaintiff's amended complaint lacks a single specific fact demonstrating the existence of 'malice' or 'reckless disregard.' As <u>Foor</u> pointed out, **it is irrelevant that defendants may have foreseen the difficulties and frustration that Ms. Alcalde encountered** as a result of their failure to provide sign language interpreters. **Rather, the issue is whether defendants desired Ms. Alcalde to suffer severe emotional distress.** Because plaintiff fails to set forth sufficient facts establishing the first element of the tort, I need not consider whether the remaining elements have been factually supported.

*Id.* at 712-13. (Emphasis Added). Since the plaintiffs were unable to prove that the medical personnel at Deaton bore any animus toward the decedent, the plaintiffs' claim for intentional infliction of emotional distress failed as a matter of law. *Id.* at 713.

Plaintiff's facts similarly lack the requisite showing of animus. While Plaintiff chronicles his journey, and describes the conditions he allegedly endured, there are no facts supporting the notion of animus by the guards toward him. Nothing suggests the guards desired Plaintiff to suffer severe emotional distress.

Plaintiff also fails to satisfy the outrageousness element. What would usually constitute "malice" under the law is insufficient to establish the outrageous conduct element. *Green v. Wills Group, Inc.,* 161 F. Supp. 2d 618 (D. Md. 2001). Malice is "conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Bowden v. Caldor,* 350 Md. 4, 23 (1998) (internal citations omitted). To successfully allege outrageous conduct, the plaintiff must prove something *more* than malice. *See, Branch v. McGeeney*, 123 Md. App. 330 (1998) (actions of police officers in cuffing nine-year-old minor's hands behind her back after allegedly forcing her to her knees, pursuant to an arrest after she refused neighbor's request to stop throwing acorns at apartment building, were not so extreme and outrageous as to give rise to a claim for intentional infliction of emotional distress). Again, Plaintiff failed to allege facts that satisfy the outrageousness element. Plaintiff identifies events relating to the transfer of detainees by van. Even if the conditions reached the level of inappropriate (which they do not), there is nothing even remotely close to satisfying outrageousness.

With regard to the required severity, "a Plaintiff must show that the distress inflicted was so severe that no reasonable person could be expected to endure it. *Strickland v. Carroll Co.*, *Maryland*, 2012 WL 401075 (D. Md. 2012) (quoting *Lauture v. St. Agnes Hosp.*, 2009 WL

5166253, at *12 (D. Md. 2009)) See also *Tackacs v. Fiore*, 473 F.Supp 2d. 647. 652 (D. Md. 2007) (stating that emotional distress must be so severe as to have disrupted a plaintiff's ability to function on a daily basis). Stated otherwise, the "balm" of recovery is to be reserved for those wounds that a truly severe and incapable of healing themselves. *Figueiredo-Torres v. Nichol*, 321 Md. 642, 653 (1991).

In the present case, Plaintiff alleges that as a direct and proximate result of the Defendant's action, "Plaintiff suffered and continues to suffer great physical pain and anguish, humiliation and embarrassment, and sever and extreme emotional distress." This is similar to the allegations in *Strickland*, where the Plaintiff alleged that the Defendant's conduct was "heinous, unlawful, and caused the Plaintiff sever emotional distress, for which Plaintiff would seek medical assistance, if he could afford to do so." *Strickland*, at *28. Such an allegation, however, was insufficient. In this case, as in *Strickland*, there is no allegation that suggests that the Plaintiff suffered emotional distress beyond that which an ordinary person could be expected to bear, or of such a severity that it affected his ability to function on a daily basis. *Strickland*, at *29 (citing *Tackas*, 473 F.Supp. 2nd at 652). See also *Kashaka v. Balt. Co. Md.*, 450 F.Supp 2d. 610, 620 (D. Md. 2006) (rejecting a claim for IIED because "Plaintiff claims only that they have suffered humiliation, a loss of income, damage to their reputation, and familial tensions and frictions. They do not offer any proof as to the intensity or duration of their trauma"); *Farrasat v. Paulikas*, 32 F.Supp 2d. 248 (granting Motion to Dismiss with respect to claim for IIED because "Plaintiff has done no more than conclusorily allege that he suffered severe and emotional distress and mental anguish. . .there is no allegations in the Amended Complaint that Plaintiff was ever treated by a physician about his mental anguish, that he was ever hospitalized

because of a severely disabling emotional condition, that he lost sleep or weight, or that he was subsequently unable to live a normal life").

Plaintiff, like the plaintiffs in *Farrasat*, fails to identify the requisite severity of emotional distress.   There is no indication of medical treatment, hospitalization, or of any severely disabling condition resulting from the alleged distress suffered as a result of Defendant's actions. The absence of facts pertaining to such severe distress is fatal to Plaintiff's intention infliction of emotional distress cause of action.   For all of these reasons, Count II must be dismissed.

2.    **Count III – Negligent Hiring, Training, or Supervision.**

Plaintiff fails to identify facts upon which to base a claim for negligent hiring, training, or supervision.   Plaintiff asserts that "Defendant failed to adequately hire, train and supervise their employee so as to ensure the safety and reasonable care of the prisoners over which they would have control.   Defendant's prisoner transport employees received grossly inadequate   training, and the policies and procedures of the Defendant were negligently and intentionally designed to cause harm in the persons in custody and control of Defendant's employees." *Compl.* ¶ 83.   It is, however, a mere conclusory allegation.

To survive a Rule 12(b)(6) Motion to Dismiss, the Complaint must contain "enough facts to state a claim for which relief that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 554, 570 (2007).   This requires Plaintiff to "nudge their claims across the line from conceivable to plausible." *Id.*   While the plausibility standard is not akin to a probability requirement, the Plaintiff is required to "articulate facts. . .that show that the Plaintiff has stated a claim entitling him to relief." *Twombly*, 550 U.S. at 557.

Plaintiff's cause of action for negligent hiring, training, or supervision, is devoid of any facts pertaining to such.   There are no facts that identify any training that any employee ever

received, much less facts that demonstrate, or even indicate that such training was insufficient, inadequate or deficient in any way.  The same is true with regard to supervision.  Plaintiff's Complaint contains absolutely no facts as to any of these issues.

Plaintiff's Complaint is a recitation of events that allegedly occurred pertaining to his transportation from Montgomery Co., Maryland to South Carolina.  There are no facts alleged in connection with any hiring, training, supervision, policy, or procedure of PTS, its employees, or its representatives.  Plaintiff's cause of action for negligent hiring, training, and supervision essentially asserts that because Plaintiff alleges PTS' agents engaged in actionable conduct, then they must have not been properly trained or supervised.  This, however, lacks any factual support, and is an exercise in complete speculation.  Thus, the allegations of negligent hiring, training, and supervision are not only conclusory allegations, they are speculative allegations that require inference upon inference, upon inference.  Such statements are not sufficient to state a claim.  For these reasons, Count III for Negligent Hiring, Training, and Supervision must be dismissed.

3.    **Count IV – False Imprisonment.**

Plaintiff alleges that PTS falsely imprisoned Plaintiff by intentionally and unlawfully restricting his freedom and movement beyond any lawful authority.  *Compl.* ¶ 88.  As is demonstrated below, however, Plaintiff's cause of action necessarily fails because Plaintiff identifies no facts to suggest that Plaintiff's arrest, pursuant to the fugitive warrant, and subsequent detention during transport back to South Carolina, was unlawful.

The elements of false imprisonment are: (1) deprivation of the liberty of another; (2) without consent: and (3) without legal justification.  *Carter v. Aramark Sports and Entertainment*

*Services, Inc.*, 153 Md. App. 210, 249 (2003).  The test of legal justification is judged by the principles applicable to the law of arrest.  *Id.*

Plaintiff, however, has not, and cannot, identify any facts supporting the element of unlawfulness or lack of legal justification.  The Plaintiff was arrested in Maryland on a fugitive warrant in connection with his offenses in South Carolina.  *Compl.* ¶ 8.  *Exhibit 1*.  The arrest, and seizure of Plaintiff in Maryland, was pursuant to the fugitive warrant, and his transportation was for the purpose of returning Plaintiff to South Carolina to face the charges there.  For Plaintiff to establish that the seizure/arrest was without justification, he would necessarily would need to establish that his arrest pursuant to the fugitive warrant was not legally justified.  He has not even alleged any facts to support a contention that his arrest was unlawful.

Not only does the Plaintiff fail to allege facts to support the notion that his arrest pursuant to the fugitive warrant was not legally justified, the allegations in the Complaint prohibit any such contention now.  Because Plaintiff was arrested in connection with a fugitive warrant for purposes of extradition, Plaintiff could have required that the State of Maryland issue a rendition warrant.  *Md. Code Ann. Crim. Proc. § 9-107.*  Plaintiff elected not to do so.  Plaintiff acknowledges that he waived extradition to South Carolina, and therefore, waived the issuance of the rendition warrant, and all other procedural incidental to extradition proceedings.  *Md. Code Ann., Crim. Proc. § 9-124.*  This includes contesting his arrest.  *Compl.* ¶ 9.

Even if Plaintiff had not waived extradition, and a warrant of rendition issued, the warrant itself, is *prima facia* sufficient to justify the arrest of the fugitive and his delivery to the agent of the demanding state.  *Willin v. Sherriff of Wicomico City*, 201 Md. 667, 669 (1953).  To then rebut the presumption that the constitutional and statutory requirements were met, Plaintiff would be required in a *Habeas Corpus* action to prove beyond a reasonable doubt either that he

was not present in the demanding state at the time of the alleged defense or he was not the person named in the warrant. Such a requirement constitutes "overwhelming evidence" not merely contradictory evidence. *Burton v. Mumford*, 219 Md. App. 673, 687-88 (2014), *Cert. denied* 441 Md. 218 (2015). In short, Plaintiff is estopped from asserting that his arrest, pursuant to the fugitive warrant, and delivery to PTS for return to South Carolina was unlawful, because the Plaintiff waived any such ability to make any such argument when he waived extradition; and furthermore, cannot identify any facts supporting the notion that the arrest, and thus imprisonment was without legal justification.

While Plaintiff alleges that the conditions of confinement during his transportation from Montgomery County, Maryland to South Carolina are actionable, they cannot be actionable in the context of a false imprisonment cause of action, because his imprisonment itself was not unlawful. Therefore, Plaintiff's false imprisonment action must be dismissed with prejudice.

4.    **Count V – 42 U.S.C. § 1983, Unlawful Arrest, Seizure, Detention.**

Plaintiff alleges in Count V of the Complaint that he was deprived of numerous protected property and liberty interests when the Defendant's agents arrested and detained him for an unreasonable amount of time in outrageous conditions, without a reasonable opportunity to make a phone call to inform his family and/or friends of his whereabouts. *Compl.* ¶ 99. Plaintiff alleges that these actions deprived him of his rights under Fourth and Fourteenth Amendments to the United State Constitution, including, but not limited to, the right to be secure in one's person from unreasonable seizures. *Compl.* ¶ 97. Plaintiff thus seeks to hold PTS liable for the actions of its agents.

It is well settled in this Circuit that *respondeat superior* liability has no application to 42 U.S.C. §1983 actions. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658. 692-92 (1978); *see also*

13

*Clark v. MD Dept. of Pub. Safety & Corr. Svcs.*, 316 Fed.Appx. 279 (4th Cir. 2009) ("principles of *respondeat superior* have no application to §1983 actions." (citations omitted)); *Alston v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. MD 1999) ("specifically, a private corporation is not liable under §1983 for torts committed … when such liability is predicated solely upon a theory of *respondeat superior*."). The "[4th Circuit] has found that this rule is equally applicable to private corporations." *Id*, see also *Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004)(no *respondeat superior* liability under §1983). Under §1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person … to the deprivation of any rights…." 42 U.S.C. §1983. The statute requires a showing of personal fault, whether based upon the defendant's own actions or another's conduct in executing the defendant's policies or procedures. *Monell*, 436 U.S. at 690. Further, under § 1983 an entity cannot be held liable solely because it employs a tortfeasor. *Id*. A private corporation may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Id.* at 694.

Additionally, similar to Plaintiff's false imprisonment cause of action, Plaintiff cannot, and does not identify facts to support a § 1983 claim for unlawful arrest/seizure/detention.

To prevail on a Fourth Amendment claim for unreasonable seizure Plaintiff must establish that: (1) the Defendant initiated or maintained a criminal proceeding; (2) the criminal proceeding terminated in Plaintiff's favor; (3) the proceeding was not supported by probable cause; and (4) the Plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of legal proceeding. *Martin v. Connor*, 882 F.Supp 2d 820, 842 (D.Md. 2012).

As stated above, there can be no dispute that Plaintiff's seizure by PTS for purposes of transporting Plaintiff to South Carolina was legally justified. The Plaintiff waived extradition, and thus there are no facts to support the allegation that the arrest was not proper.

Moreover, Plaintiff cannot sustain a Fourth Amendment-based Section 1983 claim in connection with his allegation that PTS detained him for an unreasonable amount of time. Plaintiff alleges that PTS had custody of, and thus detained him, for a period of ten (10) days. This is not sufficient to establish a Fourth Amendment claim of unreasonable seizure, because the time in and of itself, ten (10) days, is not unreasonable.  It is undisputed that the Plaintiff could have permissibly been held for at least thirty (30) days while awaiting the Governor's warrant, and possibly more.  Md. Code Ann. Crim. Proc. § 9-115.  This timing is customary in the extradition process.  As the Court noted in *Link v. Cmar*, 2015 WL 867664 (W.D. Pa. 2015),

> "The significant delays built into the extradition process tend to undercut Plaintiff's argument that he eighteen (18) day detention violated the constitution.  As we just discussed, an alleged fugitive may be held for a significant period of time pending Governor's warrant for his arrest and extradition."

*Link*, at *6 (quoting *Matinez v. Son*, 896 F. Supp 2d. 710, 723 N.D. Ill. 2012).

Thus, given the commonly accepted duration of detention for inmates involved with the extradition process, the duration of Plaintiff's confinement by PTS of ten days is nowhere near an unreasonable duration of time.

5.    **Count VI – 42 U.S.C. § 1983 – Mistreatment in Custody.**

    *a.    PTS Cannot be Liable under 42 U.S.C. § 1983 on a Theory of Respondeat Superior.*

Plaintiff, in Count VI, alleging violation of 42 U.S.C. § 1983 for mistreatment in custody contends that PTS' guards were working as agents within their scope of employment for PTS, and that thus PTS is vicariously liable for the guards' wrongful acts. *Compl.* ¶ 115.  Plaintiff's assertion is inaccurate as a matter of law.

For the same reasons identified as to Count V above, PTS, as an entity, may not be held vicariously liable for the actions of its agents in connection with a § 1983 cause of action. Consequently, Count VI against PTS alleging vicariously liability must be dismissed.

   b.   *Plaintiff Fails to Sufficiently Allege a Policy, Custom, or Procedure Upon Which to Base a § 1983 Claim.*

Because PTS may not be held vicariously liable for the actions of its agents under a theory of *respondeat superior* in connection with a § 1983 claim, any liability for PTS can only be the result of a policy, custom, or practice that is the moving force behind the constitutional violations alleged by the Plaintiff. *Monell v. Dept. of Soc. Services*, 436 US 658 (1978).

In establishing the policy, custom, or procedure upon which Plaintiff seeks to base his claim, Plaintiff must satisfy the appropriate pleadings standards under the Federal Rules of Civil Procedure, as set forth in *Bell Atlantic Corp. v. Twombly*, 550 US 554 (2007).  This requires to the Plaintiff's to state a claim which is plausible on its face to survive a motion to dismiss.  The claim is plausible when the Plaintiff pleads facts that allow the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged.  *Hutchison v. Metropolitan Government of Nashville & Davidson County*, 685 F.Supp 2d. 747, 751 (M.D. Tenn. 2010).  The plausibility standard requires more than a sheer possibility of unlawful actions.  When a complaint pleads facts that are "merely consistent with" liability, it "stops short of the line between possibility and plausibility of relief." *Id.*  The court must begin by identifying pleadings that, contain no more than conclusions, are not entitled to the assumption of truth. *Id.*

In *Hutchison*, the Plaintiff alleged that the Defendant's custom, policy, or practice of stopping vehicles and ordering passengers to exit the vehicles without sufficient cause and in disregard of passengers' disabilities identified a sufficient policy.  The Court disagreed.  The

Court noted that while the Plaintiff detailed the events of the traffic stop at issue, Plaintiff did not include any facts "related to a municipal policy on probable cause in traffic stops, or a municipal custom, policy, or practice regarding drivers or passengers who are disabled." *Id.* The Court further noted that "beyond the assertion that the Defendant Metropolitan Government failed to adequately train its officers in stopping vehicles and/or ordering passengers out of those vehicles in disregard of their disabilities and injuries, Plaintiff gives no additional factual support." *Id.* The Court then held that the Plaintiff's pleadings "stopped short of the line between possibility and plausibility" regarding liability. *Id.*

A similar review was conducted by the Court in *Franson v. City and County of Honolulu*, 2016 W.L. 4007549 (D.Hi.2016). In that matter the Court held that the Plaintiff's allegation that "the Honolulu Police Department has a custom, policy, practice, and/or usage of condoning and/or ratifying the use of excessive force by Honolulu Police Department officers, including but not limited to officers with the Honolulu Police Department Crime Reduction Unit" were mere conclusory allegations, insufficient upon which to base in a § 1983 claim. *Id.* at *5. The Court indicated that the Complaint constituted a bare allegation that the Defendant established and managed the Unit of the Department that the Plaintiff alleged caused the violations, and that such does not sufficiently state a plausible Section 1983 policy or custom claim. *Id.* In identifying the shortcomings, the Court noted as follows:

> "To be clear, the Complaint does not: (1) identify an actual policy, custom or practice; (2) explain how this policy, custom or practice violates Plaintiff's Fourth Amendment Rights; or (3) explain how the policy, custom or practice was the moving force behind the violations." *Id.*

The shortcomings identified in *Hutchison* and *Franson* are even more apparent in the present matter. Plaintiff's Complaint speaks to PTS's policies or procedures in only two

paragraphs in the entire Complaint.   Plaintiff alleges that "Defendant's prison transport employees received grossly inadequate training, and the policies and procedures of Defendant were negligently and intentionally designed to cause harm to persons in the custody and control of Defendant's employees." *Compl.* ¶83.  Furthermore, Plaintiff alleges that "Defendant has established customs and/or policies that fail to train and supervise employees from violating the Constitutional Rights of prisoners such as Mr. Karn, including prisoner's rights to be free from unreasonable searches and seizures, the right to bodily integrity, the right to be free from cruel and unusual punishment and the right to personal security." *Compl.* ¶116.

There were no further references to PTS's policies, customs or procedures.   The aforementioned references fail to meet the pleading standard set forth in *Twombly, Iqbal*, and the application thereof as described in cases such as *Hutchison* and *Franson*.  Specifically, Plaintiff fails to identify the actual policy, custom or practice that is at issue.  Rather, he merely identifies a conclusory policy of violating rights.  Furthermore, it clearly does not explain how any such policy was the moving force behind the violations at issue in this case.  Of course this is self-evident, because the Plaintiff has failed to identify any actual policy, it is impossible to describe or explain how such policy is the moving force behind the alleged violations in this matter. Therefore, given Plaintiff's failure to adequately identify and plead facts necessary to support a cause of action based upon PTS's policies, customs or procedures, Plaintiff's § 1983 claim against PTS must be dismissed.

c.       *Plaintiff's Alleged Facts Do Not Support a Claim of Violation of Civil Rights Under § 1983.*

As an initial matter, it must be noted that, although Plaintiff identifies a factual chronology setting forth allegations of the conditions of his confinement during his

transportation from Montgomery County, Maryland to South Carolina, Plaintiff does not identify which of these conditions he alleges constitute Constitutional violations.

Nevertheless, none of the factual allegations set forth in Plaintiff's Complaint are sufficient to constitute violations of Plaintiff's Constitutional Rights, and thus are inadequate to form the basis of a § 1983 claim.

In the context of "conditions of confinement" cases, the 8th Amendment is concerned only with "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 450 2U.S. 337, 348 (1981). The applicable standard contains both an objective and subjective prong. To satisfy the objective prong for such claims, "extreme deprivations are required." *Hudson v. McMillian*, 503 U.S.1, 9 (1992). Only grave deprivations of the civilized measure of life and necessities violate the cruel and unusual punishment clause. *Rhodes*, at 348.

The Constitution simply does not protect a prisoner from unpleasant prison experiences. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Circuit 1987) nor does the Constitution mandate comfortable conditions of confinement. *Rhodes v. Chapman*, 101 S.Ct. 2392, 2400 (1981). It necessary follows that a prisoner has not been subjected to cruel and unusual punishment simply because he has been made to feel uncomfortable during the course of a transfer from one prison to another. *Woods v. Edwards*, 51 F.3d 577, 581 (5th Circuit 1995).

The conditions alleged by the Plaintiff in the Complaint, even if accepted as true, do not meet this standard. Plaintiff alleges that he was only fed a hamburger and a bottle of water every six hours (Compl., ¶¶33-34); that the temperature in the van was hot due to the unseasonably warm December (Compl., ¶36), and that he and the other detainees were not provided the opportunity to bathe or shower (¶53).

These exact conditions have been the subject of inquiry, and held to be insufficient to constitute a Constitutional violation.  The Court in *Myers v. Transcor America, LLC*, 2010 W.L. 3619831, *9 (M.D. Tenn. 2010), stated as follows:

> "Even if the Court takes as true the allegations that the transport vans were extremely hot or cold and were dirty and noisy, that the inmates being transported were fed infrequently and had difficulty eating and drinking because of the manner of being restrained, and that the inmates being transported were given infrequent bathroom breaks, these allegations simply fail to evidence the type of living conditions which are so extreme as to violate contemporary standards of decency and, thus, the objective component of the Eighth Amendment claim has not been satisfied."

Furthermore, as was the case in *Myers*, in this case, there is no indication that the Plaintiff was totally deprived of either food or bathroom breaks, as would be required, and thus fails to state a claim on that basis.  *Id.*

Plaintiff has furthermore alleged poor conditions associated with the inability to bathe/shower, as well as effect of bodily functions such as urinating and defecating in the vans.  Such allegations, however, are insufficient, because the Plaintiff has not alleged any significant health condition that arose "because of the lack of opportunities to maintain personal hygiene during his transfer."  *Waller v. Transcor America, LLC*, 2007 W.L. 3023827, at *4 (M.D. Tenn. 2007).  See also *McCorkle v. Walker,* 871 F.Supp 555, 557 (N.D.N.Y. 1995) (No Constitutional violation when a prisoner was unable to change underwear for 15 days).  In *Waller*, the Court ruled that there was no significant health condition, in that the Plaintiff claimed that he "developed a skin rash due to the sweat and dirt on the seat of the bus," which the Court deemed insufficient.  *Waller* at *4.  Plaintiff in the current case certainly alleges no more than that. (Allegations of boils, rashes, and abrasions in Compl., ¶29, 38).

Plaintiff has alleged that he was deprived of sleep due to the difficulty caused by sleeping in the conditions in the van. Compl., ¶31. This too, however, is an insufficient basis for § 1983 liability. Sleeplessness caused by uncomfortable conditions "fails to rise to the level of Constitutional magnitude." *Wright v. J & S Extradition Services, LLC*, 2012 W.L. 1681812, *8 (M.D. Tenn. 2012) (Quoting *Dorsey v. Metropolitan Government for Nashville and Davidson County*, 2011 W.L. 2118269, at *2 (M.D. Tenn. 2011).

Plaintiff, furthermore, identifies issues pertaining to the fact that he was shackled, cuffed, positioned on an 8 inch bench with knees against a divider, in connection with a trip that took 10 days, encompassing what the Plaintiff identifies as a circuitous route through several states. Compl., ¶12, 14-15, 19-22, 28-30. These allegations are insufficient to satisfy a Constitutional claim. Even accepting as true, the fact that the Plaintiff was required to endure a 10 day journey, in an uncomfortable scenario, while constantly restrained, is simply not actionable. *See Zanzucchi v. Wynberg*, 1991 W.L. 83937 (9th Circuit 1991) (no violation where Prisoner was transported on a bus for 18 days with hands and ankles restrained); *Juliano v. Camden County Dept. of Corrections*, 2006 W.L. 1210845 (D.N.J. 2006) (no violation where Prisoner was transported for 10 days on a bus cross country while being shackled); *Jensen v. Jorgenson*, 2005 W.L. 2412379 (D.S.D. 2005) (No violation where Prisoner was held in restraints and driven in a van for 14 days).

In addition to the fact that the conditions alleged do not rise to the level of Constitutional violations, the claims are further undermined by the fact that all such conditions alleged were undisputedly temporary in nature. The Temporary nature of such conditions weighs against any possible conclusion that a Constitutional violation occurred. *Myers v. Transcor America, LLC*, 2010 W.L. 3619831, at *9 (M.D. Tenn. 2010) (Citing *Hutto v. Finney*, 437 U.S. 678, 686-87

(1978) ("A filthy overcrowded cell might be tolerable for a few days and intolerably cruel for weeks or months."); *Dean v. Campbell*, 156 F.3d 1229 (6th Cir. 1998), (confinement in a cold cell for more than 20 days not sufficient to show type of extreme deprivations necessary for an Eighth Amendment condition of confinement claim)).

Even if the Plaintiff's allegations could satisfy the objective prong of the Eighth Amendment test, Plaintiff has provided no facts to establish that the Defendant's employees acted with "deliberate indifference" as is necessary to satisfy the subjective component of the condition of confinement claim. *Myers v. Transcor America, LLC*, 2010 W.L. 3619831, at *9 (M.D. Tenn. 2010). Plaintiff identifies no facts pertaining to the subjective actions of the Defendants. The Plaintiff identifies and describes the alleged conditions of confinement, but does not provide any factual support for the notion that these conditions were the result of subjective actions by the guards, such as they satisfy the deliberate indifference requirement. Plaintiff cannot satisfy that Defendant's agents had a "sufficiently culpable state of mind, i.e., an actual intent to harm or deliberate indifference to the Plaintiff's health and safety." *Farmer v. Breenan*, 511 U.S. 825, 834 (1994).

Plaintiff also cannot satisfy the Eighth Amendment excessive force standard in connection with the alleged restraints he endured. Plaintiff alleges that the restraints were too tight, and that the guards refused to loosen them despite his complaints. These claims, however, are strikingly similar to those in the case of *Wright v. J & S Extradition Services, LLC*, 2012 W.L. 1681812 (M.D. Tenn. 2012). In that case, Plaintiff also asserted "an excessive force claim, alleging that Wright violated the Plaintiff's constitutionally protected rights by refusing to loosen the Plaintiff's shackles as a result of the swelling, causing him extensive pain." *Wright*, at *9. The Court rejected such a claim, noting that security concerns dictate that prison officials may

place an inmate in restraints while moving him from one place to another. *Wright* at \*9 (citing *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Circuit 1996)). The court further noted that the Complaint did not suggest that the Plaintiff "was not medically cleared to proceed with his transfer while in restraints." *Id.* The restraints made it difficult for the Plaintiff to be comfortable during his transfer, "but the claims come nowhere near the level of a wanton and intentional infliction of pain necessary to establish an Eighth Amendment deprivation." *Wright* at \*9 (quoting *Keenan*, 83 F.3d at 1092).

6.      **Counts VII & VIII – Violations of Article 24 and 26 of the Maryland Declaration of Rights.**

Plaintiff identifies two (2) causes of action under Articles 24 and 26 of the Maryland Declaration of Rights, Count VII – Excessive Force, and Count VIII – Loss of liberty. Plaintiff asserts that the Defendant deprived him of his rights under those provisions of the Maryland Declaration of Rights to be free from the use of excessive and unwanted force, and to be free from the loss of liberty without due process.

Plaintiff may not, however, proceed with causes of action against PTS for violations of Articles 24 and 26 of the Maryland Declaration of Rights, because PTS is not a government official.

Maryland recognizes causes of action pursuant to Articles 24 and 26 of the Maryland Declaration of Rights. *Widgeon v. Eastern Shore Hospital Center*, 300 Md. 520, 533 (1984). These provisions of the Maryland Declaration of Rights have been consistently held to be "*in pari materia*" with or "equated with" the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and thus Supreme Court decisions with regard to those Amendments are particularly persuasive. *Id.* Most notably, among such decisions is *Bivens v. Six Unknown*

*Named Agents of the Federal Bureau of Narcotics*, 403 US 388, (1971), which held that a damage action is appropriate to remedy government conduct in violation of the Fourth Amendment. Specifically, the Court held that "violation of the Fourth Amendment by a federal agent acting under the color of his authority gives rise to the cause of action for damages." 403 US at 389. The cause of action exists despite the absence of any federal statute creating any liability. *Id.*

The Supreme Court, however, has responded cautiously to extending *Bivens'* remedies into new contexts. *Schweiker v. Chilicky*, 487 US 412, 420 (1988). In fact, the Supreme Court held that there is no Bivens' cause of action against a private corporation operating a federal correctional facility. *Correctional Services Corp. v. Malesko*, 534 US 61, 71 (2001). The purpose of the *Bivens'* implied cause of action is to deter individual federal officers from committing constitutional violations. *Malesko*, at 70. The threat of litigation and liability will adequately deter federal officials for *Bivens'* purposes whether they enjoy a qualified immunity or not. *FDIC v. Meyer*, 510 US 471, 474, 485 (1994). The threat of suit against an individual's employer is not the kind of deterrence contemplated by *Bivens*. Thus, on the logic of Meyer, inferring a constitutional tort remedy against a private entity was rejected. *Malesko*, 534 US at 71.

Recognizing that the cases permitting causes of action under Articles 24 and 26 of the Maryland Declaration of Rights are "*in pari materia*" with the *Bivens'* claim, such state constitutional claims also may only be pursued against "public officials" or "government agents" and may not be pursued against private citizens. *Estate of Jones v. NMS Health Care of Hyattsville, LLC*, 903 F.Supp 2d. 323, 239 (D. Md. 2012). The Maryland Court of Appeals described the situation as follows:

> "Maryland Constitutional provisions have the more narrow
> focus of protecting citizens from certain unlawful acts
> committed by government officials.   Indeed, *only*
> government agents can commit these kinds of
> constitutional transgressions."

*Manikhi v. Mass Transit Administration*, 360 Md. 333, 363 (2000) (emphasis in original).

The Court even acknowledged that federal civil rights statutes (such as Section 1983),

provide statutory claims against non-government officials, but that does not result in state

constitutional claims against such private actors.   Specifically, the Court noted as follows:

> "One difference between provisions concerns the
> remedy for a constitutional violation.   The right of
> recovery for federal violations arises from Statute –
> § 1983 – whereas the redress for state violations is through
> a common law action for damages."

*Manikhi*, 360 Md. at 362.

Simply stated, the Maryland Declaration of Rights claims implicate a narrower class of

Defendants than does § 1983.  *Dyer v. Maryland State Board of Education*, 2016 WL 2939740,

n.23 (citing *Manikhi v. Mass Transit Admin.*, 360 Md. 333 (2000)).   Because PTS is not a

government official or government agent, Plaintiff may not maintain causes of action pursuant to

Articles 24 and 26 of the Maryland Declaration of Rights.   These causes of action, necessarily

akin to the federal direct constitutional causes of action (*Bivens* claims), are limited to

government officials and may not be pursued against private actors.   Therefore, Counts VII and

VIII of Plaintiff's Complaint must be dismissed.

Respectfully submitted,

| | |
|---|---|
| */s/Eric M. Rigatuso* | */s/Megan G. Anderson* |
| Eric M. Rigatuso (Bar No. 27605) | Megan G. Anderson (Bar No. 18769) |
| ECCLESTON & WOLF, P.C. | ECCLESTON & WOLF, P.C. |
| Baltimore-Washington Law Center | Baltimore-Washington Law Center |
| 7240 Parkway Drive, 4th Floor | 7240 Parkway Drive, 4th Floor |
| Hanover, MD 21076-1378 | Hanover, MD 21076-1378 |
| (410) 752-7474 (phone) | (410) 752-7474 |
| (410) 752-0611 (fax) | (410) 752-0611 (fax) |
| E-mail: rigatuso@ewmd.com | E-mail: anderson@ewmd.com |
| *Attorney for Defendant PTS of America, LLC* | *Attorney for Defendant PTS of America, LLC* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of December, 2016, copies the foregoing Memorandum in Support of Partial Motion to Dismiss was served electronically to:

Jay P. Holland, Esq.
Timothy F. Maloney
Joseph, Greenwald & Laake, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
*Attorney for Plaintiff*

Lawrence R. Holzman, Esq.
Holzman Law Firm, LLC
6404 Ivy Lane, Suite 350
Greenbelt, Maryland 20770
*Attorney for Plaintiff*

*/s/Eric M. Rigatuso*
Eric M. Rigatuso Bar No. 27605