# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
*Southern Division*

2017 SEP 19 ⸱ 12: 09

| | | |
|---|---|---|
| **WILLIAM JEFFREY KARN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. GJH-16-3261** |
| **PTS OF AMERICA, LLC,** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff William Jeffrey Karn brings this action against Defendants PTS of America, LLC d/b/a Prisoner Transportation of America ("PTS") and John Does #1–6 (collectively, "Defendants") alleging various constitutional violations under 42 U.S.C. § 1983, violations of Articles 24 and 26 of the Maryland Declaration of Rights, and state common law claims, including negligence and intentional infliction of emotional distress, resulting from PTS's transport of Karn, a pre-trial detainee, from Maryland to South Carolina in December 2015. Presently pending before the Court is Defendant PTS's Partial Motion to Dismiss for Failure to State a Claim. ECF No. 9.[1] A hearing on the Motion was held on September 13, 2017. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, the Partial Motion to Dismiss shall be granted, in part, and denied, in part. The claims of intentional infliction of emotional distress;

---

[1] Plaintiff's Complaint asserts a total of eight causes of action: Count I: Negligence; Count II: Intentional Infliction of Emotional Distress; Count III: Negligent Hiring, Training, and Supervision, Count IV: False Imprisonment; Count V: Violation of 42 U.S.C. § 1983 – Unlawful Arrest, Seizure, and Detention; Count VI: Violation of 42 U.S.C. § 1983 – Mistreatment in Custody; Count VII: Violations of Article 24 and 26 of the Maryland Declaration of Rights – Excessive Force; and Count VIII: Violations of Article 24 and 26 of the Maryland Declaration of Rights – Loss of Liberty. ECF No. 1 at 9–19. Defendant's Partial Motion to Dismiss requests dismissal of Counts II, III, IV, V, VI, VII, and VIII. ECF No. 9. Plaintiff withdraws Counts IV and VI in his Opposition. *See* ECF No. 14-1 at 1. Thus, this Memorandum Opinion will address only Counts II, III, V, VII, and VIII.

negligent hiring, training, and supervision; the 42 U.S.C. § 1983 claim under the Fourth Amendment; and both claims under the Maryland Declaration of Rights shall be dismissed. The 42 U.S.C. § 1983 claim under the Fourteenth Amendment due process clause shall be dismissed against PTS but shall proceed against the John Doe defendants.

## I.     BACKGROUND

### A. Factual Background[2]

William Karn is an adult resident of the State of Maryland. ECF No. 1 ¶ 3. PTS is a Tennessee corporation and private company that provides extradition and detainee transportation services. *Id.* ¶ 4. PTS employs drivers and guards to transport prisoners and detainees between jurisdictions. *Id.* ¶ 5. At all times relevant to this action, Plaintiff was a pre-trial detainee in the custody of PTS. *See id.* ¶ 7.

On or about December 9, 2015, Plaintiff was arrested in Montgomery County, Maryland for failure to timely pay child support in Horry County, South Carolina. ECF No. 1 ¶ 8. Plaintiff waived an extradition hearing and was taken to a facility in Montgomery County to await transport to South Carolina. *See id.* ¶¶ 9–10. On the night of December 23, 2015, Defendants arrived to retrieve Plaintiff from the facility. *Id.* ¶¶ 10–11. Defendants handcuffed Plaintiff, strapped ankle cuffs on his legs, and ran a chain link around his midsection. *Id.* ¶ 12. Plaintiff alleges that the handcuffs were secured so tightly that the pressure on his wrists, nerves, tissue and bones made it difficult for him to open his hands, and that his fingers became numb. *Id.* ¶ 14. Plaintiff informed Defendants of this problem repeatedly, but Defendants ignored him. *Id.* ¶ 15. Defendants escorted Plaintiff out to a white van, and when Plaintiff asked how long it would take to get to South Carolina, Defendants told him not to worry about it and to "just get in the fucking van." *Id.* ¶ 16.

---

[2] Unless stated otherwise, the facts are taken from the Complaint and assumed to be true.

When Karn entered the van, there were already fourteen other prisoners inside, some of whom had been travelling for fourteen days at that point. ECF No. 1 ¶ 18. Inside the van, the prisoners were seated on eight-inch metal benches, shoulder to shoulder, with their knees pressed up against a central metal divider. *Id.* ¶¶ 27–28. The prisoners were not secured with seatbelts. *Id.* ¶ 30. Plaintiff would spend the next ten days in this van, traveling through nine different states including Maryland, Virginia, West Virginia, Ohio, Kentucky, Tennessee, Arkansas, and North Carolina, to get to South Carolina. *Id.* ¶ 19. According to Plaintiff, Defendants took a circuitous route that passed through multiple states more than once, *id.* ¶ 20, and involved several side-trips that were "completely unrelated to the transport of the prisoners," including a stop "at an out-of-the way airport so that PTS could send one guard/driver on vacation." *Id.* ¶ 21. Over the course of the trip, the van travelled to many different jails, dropping off prisoners and picking up new ones. *Id.* ¶ 56. The PTS guards alternated eighteen-hour shifts driving, sometimes reaching "speeds up to 95 miles per hour," and other times apparently "falling asleep at the wheel." *Id.* ¶¶ 24–25.

During the trip, Plaintiff and the other prisoners would "be in the back of the van on the road for 36 hours without respite." ECF No. 1 ¶ 22. Because Defendants did not secure Plaintiff or the other prisoners with seat belts, as the van "careened and bounced its way through the route," the men were thrown around the back of the van, into each other, the metal divider, and the ceiling. *Id.* ¶ 30. According to Plaintiff, these conditions made sleeping impossible. *Id.* ¶ 31. His inability to move or stand up for long periods of time also caused him to develop "painful boils, rashes, and abrasions." *Id.* ¶ 29. Because the windows of the van were blacked out, much of the time was spent in complete darkness. *Id.* ¶ 32. The temperature was warm, and "there was little air" in the compartment. *See id.* ¶ 36.

Access to food and water varied widely, and was subject to the whim of the guards. ECF No. 1 ¶ 34. Typically, every six to eight hours, the guards would stop at a McDonalds and purchase "a small hamburger from the $1.00 menu" and a twelve-ounce bottle of water for each prisoner. *Id.* ¶ 33. This meal schedule was largely inconsistent, however, and at least once, the prisoners were allegedly not given food or water for almost twice the six hour period. *Id.* ¶ 34. Additionally, the guards made minimal effort to control the prisoners, and on more than one occasion, other prisoners stole Plaintiff's food and water, leaving him with nothing to eat or drink. *Id.* ¶ 35. Plaintiff alleges that he was dehydrated for most of the journey, because the twelve-ounce bottle of water was not sufficient. *Id.* ¶ 36.

Some of the men also fought with each other by head-butting and biting one another. ECF No. 1 ¶ 58. To quell this behavior, Defendants would "indiscriminately pepper spray the entire rear compartment" of the van, including Plaintiff, even though he had not been fighting. *Id.* ¶ 59. "Shackled and bound at the waist," Plaintiff was unable to rub his eyes or splash water to rinse his eyes of the pepper spray. *Id.* ¶¶ 40, 59. At the end of one of the thirty-six hour stretches in the van, Plaintiff alleges that he became numb in the legs, which diminished his ability to stand up and exit the van. *Id.* ¶ 41. In response, Defendants pushed Plaintiff out of the van, causing Plaintiff to fall onto his side and injure his shoulder. *Id.* ¶¶ 42–44. Plaintiff was unable to brace his fall because of the shackles and handcuffs. *Id.* ¶ 43. Plaintiff alleges that he made no complaints about this because the guards stood over him "with hands on their weapons," and he was never treated for this injury. *Id.* ¶ 44.

When it came time for the prisoners to urinate or have a bowel movement, Defendants expected the prisoners to urinate "into their empty water bottles." ECF No. 1 ¶¶ 45–46. However, because the men were shackled, many of them ended up urinating on the van's floor and on

themselves. *Id.* ¶ 47. On multiple occasions, Plaintiff and other prisoners also defecated on themselves, because they could not contain their bowel movements any longer. *Id.* ¶¶ 48–49. One particular prisoner seated next to Plaintiff suffered from a form of irritable bowel syndrome, and had "to beg the guards to be permitted to move his bowels." *Id.* ¶ 50. Eventually, Defendants threw a plastic garbage bag in the back of the van and told the prisoner to use it. *Id.* Plaintiff attempted to help the man pull his pants down and use the bag in the crowded space, but these efforts were unsuccessful, and the prisoner defecated everywhere, including on Plaintiff's "leg, arms, clothing, and the floor." *Id.* ¶ 52. Defendants would not allow Plaintiff to bathe or change clothing. *Id.* ¶ 53.

Plaintiff alleges that the combination of urine, open feces, vomit, and other body odors in the van "was horrific." ECF No. 1 ¶ 54. The van had allegedly transported "other prisoners in the same circumstances" before Plaintiff, and Defendants did not clean it between prisoners, or for the duration of Plaintiff's journey. *Id.* ¶¶ 53–56. Throughout Plaintiff's transport, Defendants also did not allow him to use a phone to contact his family or friends. *Id.* ¶ 60. Plaintiff alleges that he still suffers from the physical pain, harm, and emotional distress of this experience, and "will require treatment into the foreseeable future." *Id.* ¶¶ 65–66. He states that he continues to "relive[] the pain and torment," *id.* ¶ 66, and to date, still experiences "numbness and pain in the fingers of his left hand," *id.* ¶ 39, and pain in his shoulder. *Id.* ¶¶ 44.

### B. Procedural History

Plaintiff filed the instant Complaint against PTS, and six unnamed employees, asserting eight causes of action: Count I: Negligence; Count II: Intentional Infliction of Emotional Distress ("IIED"); Count III: Negligent Hiring, Training, and Supervision; Count IV: False Imprisonment; Count V: Violation of 42 U.S.C. § 1983 – Unlawful Arrest, Seizure, and

Detention; Count VI: Violation of 42 U.S.C. § 1983 – Mistreatment in Custody; Count VII: Violations of Article 24 and 26 of the Maryland Declaration of Rights – Excessive Force; and Count VIII: Violations of Article 24 and 26 of the Maryland Declaration of Rights – Loss of Liberty. ECF No. 1 at 9–19. Plaintiff seeks judgment against Defendant in "an amount in excess of $75,000.00, plus interest and costs, and punitive damages, plus attorneys' fees, interest and costs." *See id.*

Defendant PTS filed an Answer to Count I, negligence, and a Partial Motion to Dismiss with respect to the remaining counts. In Plaintiff's Opposition, Plaintiff withdrew Count IV, false imprisonment, and Count VI, the Section 1983 claim for mistreatment in custody. *See* ECF No. 14-1 at 1. Therefore, this Memorandum Opinion will address only Counts II (intentional infliction of emotional distress), III (negligent hiring, training and supervision); V (the Section 1983 claim for unlawful arrest, seizure and detention); VII (Maryland Declaration of Rights – Excessive Force); and VIII (Maryland Declaration of Rights – Loss of Liberty).

## II.     STANDARD OF REVIEW

Defendants may "test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court should not grant a motion to dismiss for failure to state a claim for relief unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50) (1989)).

## III. ANALYSIS

### A. Intentional Infliction of Emotional Distress

To state a common law claim for IIED, Plaintiff must allege that: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Harris v. Jones*, 281 Md. 560, 566 (1977). In Maryland, an IIED claim is "rarely viable," *Borchers v. Hrychuk*, 126 Md. App. 10, 19 (1999), and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves.'" *Lee v. Queen Anne's Cty. Office of Sheriff*, No. CIV.A. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (quoting *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 804 (D. Md.2001)). Accordingly, an IIED claim is subject to a heightened pleading standard, and each element of the claim must be "pled with specificity."

*Washington v. Maynard*, No. CV GLR-13-3767, 2016 WL 865359, at \*10 (D. Md. Mar. 7, 2016)

(citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995);

*Foor v. Juvenile Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989)). Defendant

contends that Plaintiff has not alleged facts sufficient to satisfy the first, second and fourth

elements of IIED.

To adequately plead the first element of an IIED claim, a plaintiff must allege that

defendant either "desired to inflict severe emotional distress, knew that such distress was certain

or substantially certain to result from his conduct, or acted recklessly in deliberate disregard of a

high degree of probability that emotional distress would follow." *Brengle v. Greenbelt Homes,

Inc.*, 804 F. Supp. 2d 447, 452 (D. Md. 2011) (quoting *Foor*, 78 Md. App. at 175).

As to the second element, the defendant's conduct must be "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community." *Washington*, 2016 WL 865359, at

\*11 (citing *Harris*, 380 A.2d at 614). "The conduct must strike to the very core of one's being,

threatening to shatter the frame upon which one's emotional fabric is hung." *Id.* (citing *Hamilton

v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986)). In assessing this

element, "courts should consider multiple factors, including the context in which the conduct

occurred, the personality of the plaintiff and [his] susceptibility to emotional distress, and the

relationship between the defendant and plaintiff." *Brengle*, 804 F. Supp. 2d at 453. In particular,

"the extreme and outrageous character of the defendant's conduct may arise from his abuse of a

position, or relation with another person, which gives him actual or apparent authority over him,

or power to affect his interests." *Harris*, 380 A.2d at 616.

With respect to the fourth element, the plaintiff must show that he suffered "a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 804 (D. Md. 2001) (quoting *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000)). To be severe, "emotional distress need not produce total emotional disablement, but it must render the plaintiff unable to function and tend to necessary matters." *Washington*, 2016 WL 865359, at *11 (citing *Reagan v. Rider*, 70 Md. App. 503, 512 (1987)). To prevail, the plaintiff must show the "truly devastating effect of the conduct [he was] subjected to." *Kashaka v. Baltimore Cty., Maryland*, 450 F. Supp. 2d 610, 620 (D. Md. 2006) (quoting *Pemberton v. Bethlehem Steel Corp.*, 66 Md.App. 133 (Md. 1986)).

Here, Plaintiff has pleaded sufficient factual matter as to the first three elements of IIED but not the fourth. Taking the allegations in the Complaint as true, Plaintiff has alleged that PTS and its employees knowingly created and perpetuated a situation that was dehumanizing and outrageous, causing Plaintiff emotional distress. Plaintiff alleges that he was forced to sit shoulder to shoulder with fourteen other men, chained at the hands, feet, and waist, on metal benches in the back of a van for ten days. ECF No. 1 ¶¶ 18–19, 27–28, 58. Plaintiff was required to sit in the back of this van for thirty-six hour periods of time "without respite." *Id.* ¶ 22. At most, Plaintiff was provided a small hamburger and a twelve-ounce bottle of water every six to eight hours. *Id.* ¶¶ 33–35. In response to fighting among others, Plaintiff was subjected to bursts of pepper spray in a confined space, and subsequently denied medical treatment. *Id.* ¶ 59. Plaintiff also told the guards that his shackles were too tight, but these complaints were ignored, and when Plaintiff was unable to stand, the guards pushed him out of the van, injuring his shoulder. ¶¶ 15, 38–39, 41–42. The PTS guards expressly expected the prisoners to openly

urinate into their empty water bottles and defecate into plastic bags. *Id.* ¶ 45–49. According to the Complaint, when Plaintiff attempted to help a sick prisoner defecate into a bag, the feces spilled all over him and the floor, and the guards did not allow Plaintiff to bathe or change clothing. ¶¶ 52–53.

Drawing all reasonable inferences in favor of Plaintiff, Defendants knew that emotional distress would result from their conduct or acted in reckless disregard of the high probability that it would occur, and the conduct went "beyond all possible bounds of decency, and . . . [was] atrocious, and utterly intolerable in a civilized community." *Harris v. Jones*, 281 Md. at 567. Bolstering this conclusion is the fact that this conduct occurred while Plaintiff was in the custody and control of Defendants for ten days. *Cf. Gray v. Kern*, 124 F. Supp. 3d 600, 616 (D. Md. 2015) (noting that "where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized"). Defendants assumed a position of authority over Plaintiff, and were responsible for his health and safety during transport. The alleged abuse of this power, and the degradation of Plaintiff that ensued, was outrageous.

Nevertheless, while Plaintiff has alleged that he "relives the pain and torment to this date . . . and he will require treatment into the foreseeable future," ECF No. 1 ¶ 66, and "continues to suffer humiliation and embarrassment, and severe and extreme emotional distress," *id.* ¶ 79, such allegations are insufficient to plead "a severely disabling emotional response to the defendant's conduct . . . so severe that no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 762 A.2d 172, 197 (Md. Ct. Spec. App. 2000). Indeed, such conclusory statements of emotional distress are routinely rejected by Maryland courts for purposes of IIED claims. *See, e.g., Templeton v. First Tenn. Bank, N.A.*, No. CIV.WDQ-09-3280, 2010 WL 2292493, at *5 (D. Md. June 3, 2010), *aff'd in part, vacated in part on other grounds*, 424 F. App'x 249 (4th Cir.

2011) (finding allegations that plaintiff suffered "severe mental anxiety" and "extreme emotional distress for which she incurred medical costs" were insufficient to constitute severe distress); *Griffin v. Clark*, No. RWT 11-2461, 2012 WL 4341677, at *3 (D. Md. Sept. 20, 2012) (dismissing IIED claim and noting that "Maryland courts have found that mere embarrassment, public humiliation, feelings of inferiority, or shame do not rise to the level of severe emotional distress."); *Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (dismissing IIED claim where plaintiff did "not allege that she has been unable to function on a daily basis, even if her functioning is presumably affected by her psychological and physical distress."). Here, Plaintiff has not, for example, alleged that he requires psychological treatment, that he was ever hospitalized for his mental anguish, or that he is no longer able to work or function normally. For this reason, the IIED claim must be dismissed.

## B. Negligent Hiring, Training, and Supervision

Maryland has recognized that an employer has an "obligation to the public to use due care in selecting and retaining only competent and careful employees." *Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-CV-00654-AW, 2012 WL 527597, at *6 (D. Md. Feb. 16, 2012), *aff'd sub nom.*, *Jarvis v. Contractor Securitas Sec.*, 474 F. App'x 271 (4th Cir. 2012) (citing *Henley v. Prince George's Cty.*, 60 Md. App. 24 (Md. Ct. Spec. App. 1984)). To state a common law claim for negligent hiring, training, or supervision, Plaintiff must allege: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries." *Jarvis*, 2012 WL 527597, at *5 (citing *Latty v. St. Joseph's Soc. of Sacred Heart, Inc.*, 198 Md. App. 254, 272 (Md. Ct. Spec.

App. 2011)); *see also Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (noting that for a negligent training and supervision claim, the plaintiff must allege that employer knew or should have known of the employee's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action.").

"Under Maryland law, an employer's liability in this regard is not to be reckoned simply by the happening of the injurious event. Rather, there must be a showing that the employer failed to use reasonable care in making inquiries about the potential employee or in supervising or training the employee." *Gay v. United States*, 739 F. Supp. 275, 277 (D. Md. 1990) (citing *Cramer v. Housing Opportunities Commission*, 304 Md. 705, 501 A.2d 35 (1985)). Here, while Plaintiff has alleged the existence of an employment relationship between the guards or drivers and PTS, and incompetent conduct that injured Plaintiff, the Complaint is devoid of actual facts about PTS's training and supervision, or about PTS's selection of any particular employee — nor does Plaintiff allege prior incidents of misconduct involving these guards or drivers that would have given Defendants actual or constructive notice of their incompetence. Thus, *Keene v. Hawkins*, No. 2:13-CV-49, 2015 WL 7180695, at *1 (N.D.W. Va. Feb. 20, 2015), relied on by Plaintiff, is distinguishable. There, the plaintiff alleged five prior incidents of misconduct by the officer at issue, placing the defendant county on notice of the officer's tendency towards excessive force. *See id.* at *1, 6. By contrast, no such allegations are made here.[3]

---

[3] To the extent Plaintiff contends that the opportunity to conduct discovery would lead to "attestations from prisoners previously transported by Defendant," ECF No. 14-1 at 12, Plaintiff is asking the Court to grant him the keys to discovery on this issue based upon conclusory allegations. Such an approach is clearly inconsistent with the dictates of *Iqbal*, and has been routinely rejected by courts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (noting that the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *see also Young v. CitiMortgage, Inc.*, No. 5:12CV079, 2013 WL 3336750, at *12 (W.D. Va. July 2, 2013) (noting that "[t]he discovery process is not a fishing expedition, and a party is not entitled to discovery simply in hope that something will turn up.") (citing *Riddick v. United States*, No. CIV.A. 2:04CV278, 2005 WL 1667757, at *7 (E.D. Va. July 6, 2005)) (internal citations and alterations omitted).

In sum, Plaintiff's allegations are insufficient to sustain a negligent hiring, training, or supervision claim. *See Jarvis*, 2012 WL 527597, at *6 (dismissing negligent hiring claim where there were no allegations that "the security guard was unqualified or incompetent at the time Defendant hired him" or that would support "the contention that Defendant engaged in negligent hiring practices"); *Silver v. Wells Fargo Bank, N.A.*, No. CV MJG-16-382, 2017 WL 2833254, at *11 (D. Md. June 30, 2017) (dismissing negligent hiring and retention claim where complaint pointed "only to the injurious event" as evidence of negligent supervision). Therefore, the negligent hiring, training, and supervision claim is also dismissed.

### C.  42 U.S.C. § 1983 – Unlawful Arrest, Seizure, and Detention

In Count V, Plaintiff brings a claim against the individual defendants and PTS pursuant to 42 U.S.C. § 1983, claiming a violation of the Fourth and Fourteenth Amendments. ECF No. 1 at 14. Section 1983 states in pertinent part that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . for redress." 42 U.S.C. § 1983. To state a claim under Section 1983, Plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

"The traditional definition of acting under color of state law requires that the defendant in a 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Jarvis*, 2012 WL 527597, at *3 (citing *Atkins*, 487 U.S. at 49). To constitute state action, "the deprivation must be caused by

13

the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible . . . [and] the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (citing *Lugar v. Edmondson,* 457 U.S. 922, 937 (1982)). Here, as a "private corporation involved in the custody and control of prisoners," PTS performs "a traditional state function" and therefore may be held liable under Section 1983. *See Bain v. Transcor Am., LLC,* No. 3:08-0656, 2009 WL 4348598, at *6, n.2 (M.D. Tenn. Nov. 24, 2009) (imposing Section 1983 liability on private company that transported prison inmates); *Myers v. Transcor Am., LLC,* No. 3:08-0295, 2010 WL 3619831, at *16 (M.D. Tenn. Sept. 9, 2010) (noting that "TransCor's liability under Section 1983 is akin to the liability of a municipality under Section 1983.") (compiling cases).[4]

However, it is well-recognized that there is no doctrine of *respondeat superior* in Section 1983 actions, and thus, PTS cannot be held directly liable for the alleged unconstitutional acts of its employees. *See Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) (citing *Monell v. New York Department of Social Services,* 436 U.S. 658, 694 (1978)). Rather, Plaintiff can proceed only against the PTS employees in their personal capacities, or seek to establish that the employees were acting pursuant to an official policy or custom of PTS.

Plaintiff alleges a claim of "unlawful arrest, seizure, and detention" under Section 1983 in Count V, stating that "Defendants deprived Mr. Karn of his rights under the Fourth and Fourteenth Amendment . . ." *See* ECF No. 1 at 14. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. A Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through

---

[4] Defendant PTS does not dispute that it is a municipality for purposes of Section 1983 liability in this case. *See* ECF No. 15 at 7.

means intentionally applied." *Bixler v. Harris*, No. CIV. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)). Importantly, however, the Fourth Circuit has "rejected any concept of a continuing seizure rule," holding that "the Fourth Amendment applies to the initial decision to detain an accused, [but] not to the conditions of confinement after that decision has been made." *Robles v. Prince George's Cty., Md.*, 302 F.3d 262, 268 (4th Cir. 2002) (citing *Riley v. Dorton*, 115 F.3d 1159, 1163)). Thus, "[o]nce the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply." *Id.* Claims regarding the subsequent use of excessive force and conditions of confinement are therefore governed by the Fourteenth Amendment's Due Process Clause.

Here, Plaintiff does not dispute that he was arrested pursuant to a lawful warrant for failure to pay child support. *See* ECF No. 1 ¶ 8. Plaintiff waived an extradition hearing and was therefore lawfully extradited to South Carolina. *Id.* ¶ 9. Hence, Plaintiff fails to state a claim entitling him to relief for an unlawful seizure under the Fourth Amendment. *See, e.g., Davis v. Wright*, No. 3:14CV161, 2014 WL 5361335, at *2 (W.D.N.C. Oct. 21, 2014) (dismissing Fourth Amendment claim and noting that "[s]ince Plaintiff's requests to use the bathroom began after she was arrested and was about to enter the BAT Mobile for further processing, the alleged denial of those requests must be evaluated under the Due Process Clause of the Fourteenth Amendment, not the Fourth Amendment."); *Walters v. Prince George's Cty.*, No. CIV.A. AW-08-711, 2010 WL 2858442, at *6 (D. Md. July 19, 2010) (granting summary judgment on Fourth Amendment claim under § 1983, noting that "Plaintiff complains of events that occurred after Defendants . . . took custody of her, when the Fourth Amendment had ceased to apply because the single act of detaining Plaintiff had already been completed and she was already in police

15

custody"). Thus, to the extent Plaintiff raises a claim under the Fourth Amendment, those claims must be dismissed as to all Defendants.

While Plaintiff fails to state a claim under the Fourth Amendment — Plaintiff does, however, state a claim under the Fourteenth Amendment against John Does #1–6 in their personal capacities.[5] Claims challenging the "conditions of confinement imposed upon pretrial detainees are examined under the Due Process Clause of the Fourteenth Amendment." *Oladokun v. Maryland*, No. CIV.A. DKC-14-463, 2014 WL 7014511, at *7 (D. Md. Dec. 10, 2014).[6]

The constitutional protections guaranteed to a pretrial detainee under the Fourteenth Amendment "are co-extensive with those provided to convicted prisoners by the Eighth Amendment." *Christopher v. Warden Assistant Warden of Baltimore City Det. Ctr.*, No. CIV.A. JFM-13-1057, 2013 WL 1701464, at *1 (D. Md. Apr. 17, 2013) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001) (noting that "the Fourteenth Amendment rights of pre-trial detainees 'are at least as great as the Eighth Amendment protections available to a convicted prisoner.'") (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Thus, "pretrial detainees have a clearly established right to the Eighth Amendment's restraints on 'cruel and unusual punishments' by prison officials . . . ." *Sleeper v. City of Richmond, Va.*, No. 3:12CV441-HEH, 2012 WL 3555412, at *6 (E.D. Va. Aug. 16, 2012). In determining whether conditions of confinement

---

[5] As discussed during the hearing on the Motion, because Defendant has not moved to dismiss Count I, this case would move forward into discovery regardless of the Court's rulings on the pending Motion. Thus, Plaintiff will have the opportunity, through discovery, to identify the individual drivers who are currently identified as John Doe defendants, amend the complaint to describe what each did and serve them with the Amended Complaint. For now, the Court will address whether their collective conduct could state a claim, recognizing that the Defendant will be permitted to bring a renewed Motion based on the specific conduct ascribed to individual defendants, if appropriate.

[6] The Court notes that Count VI, labeled "42 U.S.C. § 1983 – Mistreatment in Custody," more clearly addressed the allegations the Court is relying on as its basis for not dismissing Count V. *See* ECF No. 1 at 15. For reasons explained during the hearing, however, Plaintiff has withdrawn Count VI, but the Court finds that Count V sufficiently alleges a Fourteenth Amendment claim.

16

constitute "cruel and unusual punishment," the Court employs a two-prong test, considering first "whether the conditions of confinement objectively inflict harm that is sufficiently serious to deprive a prisoner of minimal civilized necessities." *Id.* at *6 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Roberts v. Taniguchi*, No. CIV.A. JKB-12-1187, 2012 WL 5252288, at *5 (D. Md. Oct. 23, 2012) (describing two-prong test). In this regard, prison officials are under a duty "to furnish humane conditions of confinement, including provision of adequate food, clothing, shelter, and medical care." *Sleeper*, 2012 WL 3555412, at *6 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Second, the Court determines "whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement." *Id.* (citing *Farmer*, 511 U.S. at 837). Further, Plaintiff must allege an injury that is "more than de minimis." *Robles v. Prince George's Cty.. Maryland*, 302 F.3d 262, 269 (4th Cir. 2002).

The factual allegations in the Complaint demonstrate conditions in the prison van that were cruel and unusual. The rear compartment where Plaintiff was housed contained fourteen other men, many of whom openly urinated and defecated inside of the van throughout the course of the trip. While attempting to help another prisoner, Plaintiff got feces on his leg, arms and clothing and was not permitted to bathe or change clothes. Additionally, no efforts were made to clean the van of these unsanitary conditions, and thus, Plaintiff sat in a windowless, warm van, among feces and other bodily fluids, for ten continuous days. It is a "settled rule that housing inmates in a grossly overcrowded and unsanitary facility violates the inmates' rights to be free from cruel and unusual punishments." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 693 (E.D. Va. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991); *Strickler v. Waters*, 989 F.2d 1375 (4th Cir. 1993)); *see Dawson v. Kendrick*, 527 F. Supp. 1252, 1288 (S.D.W. Va. 1981) (finding that

inadequate plumbing, failure to provide functioning lighting fixtures, and denial of clean bedding and clothing constituted constitutional violations).

In addition, Plaintiff has alleged that he was forced to sit in darkness for much of the journey, surrounded by metal on all sides, and denied clean clothing for ten days. The drivers took 18 hour shifts, often began to fall asleep at the wheel and drove at speeds up to 95 miles per hour. Scuffles between prisoners were not addressed other than by the indiscriminate spraying of pepper spray into the back of the van. For the duration of the trip, Plaintiff was shackled at the hands, torso, and ankles. As Plaintiff has alleged, the restraints were too tight, causing him to lose sensation in his fingers. Plaintiff's cries went ignored and to date, Plaintiff still suffers numbness in his hands. When Plaintiff was unable to exit the van, the PTS guards pushed him out onto the ground, injuring Plaintiff's shoulder. Plaintiff still experiences physical pain in his shoulder. Such injuries are more than de minimis, and support a claim for a Fourteenth Amendment violation. *See Robles v. Prince George's Cty., Maryland*, 302 F.3d 262, 270 (4th Cir. 2002) (finding Fourteenth Amendment due process violation of pretrial detainee who was "tied up in a dark and deserted location in the middle of the night," and noting that "any reasonable person would have been upset by what happened here. . . . The resulting injury was more than de minimis").[7]

---

[7] Both sides have cited the Court to a list of cases, mostly from district court judges, supporting their respective positions on whether the conditions alleged support a Fourteenth Amendment claim. *Compare Wright v. J&S Extradition Services, LLC, et al.*, No. 3:11-0464, 2012 WL 1681812 (M.D. Tenn. May 11, 2012) (finding plaintiff did not state a claim where during transport he was shackled, not allowed to use bathroom, not allowed to bathe and his high blood pressure was not attended to), *Jensen v. Jorgenson*, No. Civ. 03-4200, 2005 WL 2412379 (D.S.D. Sept. 29, 2005) (granting motion to dismiss where plaintiff alleged being chained to other prisoners and not being allowed to use the restroom for 12 hours) *with Otero v. Catalogne*, C.A. 08-282, 2010 U.S. Dist. LEXIS 102160 (W.D. Penn. Sept. 28, 2010) (allowing claim to move forward against driver of prisoner transport vehicle who was falling asleep and driving recklessly); *Avery v. Extradition Transp. Of Am.*, CV 11-00153-M-DWM-JCL, 2012 U.S. Dist. LEXIS 186588 (D. Mont. Nov. 28, 2012) (granting default judgment in favor of plaintiff who alleged an Eighth Amendment violation where plaintiff was shackled continuously and deprived of adequate sleeping facilities, restroom facilities, and showers for at least six days). It is difficult to extrapolate a consistent pattern from these holdings other than to note that they are fact specific and reflect a difference of opinion among judges in different jurisdictions.

With regard to Defendants' culpable state of mind — drawing all reasonable inferences in Plaintiff's favor, the guards and drivers had actual knowledge of these conditions, as they are alleged to have required the prisoners to urinate in water bottles and defecate in plastic bags. The guards and drivers are alleged to have pepper sprayed the entire rear compartment of the van, and subsequently denied medical treatment to the prisoners. Indeed, they sat in the front seat and bore witness to these events over the course of a week and a half. Thus, Plaintiff has alleged sufficient facts to state a claim for unconstitutional conditions of confinement under the Fourteenth Amendment against John Does #1–6.

With respect to Defendant PTS, however, under *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658 (1978), a § 1983 cause of action may sustain against a municipality only when execution of the government's unconstitutional policy or custom causes a plaintiff injury. *Lee,* 2014 WL 476233, at *10; *see also Walker v. Prince George's Co., Md.,* 575 F.3d 426, 431 (4th Cir. 2009) (stating that the liability of the municipality only arises where the employees' unconstitutional actions are taken in furtherance of a municipal policy or custom); *Bain v. Transcor Am., LLC,* No. 3:08-0656, 2009 WL 4348598, at *6–7 (M.D. Tenn. Nov. 24, 2009) (discussing *Monell* claim against private company that provided prisoner and detainee transportation services). To hold a municipality liable for an unconstitutional policy or custom, plaintiff must allege liability "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.'" *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citations omitted).

Because Plaintiff's Complaint is devoid of factual allegations from which the Court could reasonably infer the existence of a written policy, a policy established by custom, or a policy established by negligent training and supervision, Plaintiff has failed to state a 42 U.S.C. § 1983 claim against Defendant PTS in Count V of the Complaint. *See Miller v. Hamm*, Civ. No. CCB–10–243, 2011 WL 9185, at *14 (D. Md. Jan. 3, 2011) (dismissing a plaintiff's § 1983 claim against defendants in their official capacity where the plaintiff "purports to identify several policies, customs, and practices engaged in by the [Defendants] that causally contributed to his constitutional violations, [but] these allegations amount to no more than conclusory statements that are not sufficient to establish a plausible claim for relief"). Indeed, Plaintiff's Complaint appears to be limited to a single experience, at a particular time, with a particular set of guards.[8] Accordingly, Count V as to PTS is dismissed.

### D. Violations of Article 24 and 26 of the Maryland Declaration of Rights – Excessive Force and Loss of Liberty

Finally, as to Plaintiff's Articles 24 and 26 claims, "the cases are legion in which Maryland Courts have construed Article 26 *in pari materia* with the Fourth Amendment to the United States Constitution," *Strickland v. Carroll Cty., Md.*, No. CIV.A. ELH-11-00622, 2012 WL 401075, at *23 (D. Md. Feb. 7, 2012) (compiling cases), and Article 24 is the state analog to the Fourteenth Amendment Due Process Clause. *See Lee*, 2014 WL 476233, at *15 (noting that Articles 24 and 26 are the state analog to the federal Fourth and Fourteenth Amendments, and they are analyzed *in pari materia*). Moreover, in evaluating claims under Article 24 and Article 26, "Supreme Court decisions with regard to those amendments are particularly persuasive." *Widgeon v. Eastern Shore Hospital Center*, 300 Md. 520, 533 (1984). But Maryland courts have

---

[8] During the Motion hearing, counsel for Plaintiff presented the Court with a list of similar allegations against PTS employees; however, those allegations were not included in the Complaint and will, therefore, not be considered for purposes of this Motion.

recognized that relief for violations of the U.S. Constitution do not necessarily warrant relief

under the Maryland Declaration of Rights. *See Manikhi v. Mass Transit Admin.*, 360 Md. 333,

361–62 (2000) (citing *DiPino v. Davis*, 354 Md. 18, 50 (1999) ("[T]he right of recovery for

Federal violations arises from statute—§ 1983—whereas the redress for State violations is

through a common law action for damages."); *see also Widgeon*, 300 Md. at 537–538 ("we hold

only that where an individual is deprived of his liberty or property interest in violation of Articles

24 and 26, he may enforce those rights by bringing a *common law action for damages*")

(emphasis added); *Dyer v. Maryland State Board of Education*, 187 F. Supp. 3d. 599, 614 n.23

(D. Md. 2016) (noting that Article 24 implicates a narrower class of defendants than § 1983).

Liability for constitutional violations under statute (*i.e.*, § 1983) attaches to those acting

"under color of law," whereas federal non-statutory constitutional claims may not be pursued

against private actors. *See Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71 (2001)

(holding that plaintiff may not bring *Bivens* action against private prison even if prison was

acting "under color of federal law"). The Fourth Circuit has also recognized the need to restrain

the liability of private actors under judicially-created constitutional remedies, like *Bivens*, as

compared to § 1983, which is a "congressional enactment that expressly creates liability" for

those acting under color of law. *See Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006). As the

Fourth Circuit stated, "[t]here is ample reason to be even more cautious about imputing liability

to private actors under *Bivens* than under § 1983." Id.

Likewise, Maryland courts have acknowledged that plaintiffs may only pursue state

constitutional claims against "public officials" or "government agents."[9] *See Estate of Jones v.*

---

[9] Plaintiff introduces general concepts of agency law to suggest that the Defendants, acting under contract with the State, are liable as government agents. *See* ECF No. 14-1 at 17 (citing *Wood v. Walton*, 855 F. Supp. 2d 494, 503 n.25 (D. Md. 2012). This analysis is not directly applicable to whether the Defendants, acting 'under color of law' for purposes of § 1983 liability are also liable under judicially-created constitutional remedies.

*NMS Health Care of Hyattsville, LLC*, 903 F. Supp. 2d 232, 239 (D. Md. 2012) ("Although a plaintiff may bring a common law cause of action under [Article 24] . . . he can only do so against "public officials" or "government agents") (internal citation omitted); *see also Manikhi*, 360 Md. at 363 ("Maryland Constitutional provisions have the more narrow focus of protecting citizens from certain unlawful acts committed by government officials. Indeed, *only* government agents can commit these kinds of Constitutional transgressions.") (emphasis in original and citation omitted). Therefore, because neither PTS nor John Does #1-6 are public officials or government agents, they are not subject to claims under Article 24 and Article 26 of the Maryland Declaration of Rights.[10]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss, ECF No. 9, is granted, in part, and denied, in part. A separate Order shall issue.

Date: September _18_, 2017

GEORGE J. HAZEL
United States District Judge

---

[10] In addition to the analysis above, the Court's dismissal of the Plaintiff's Fourth Amendment claim under Section § 1983 in Count V precludes the Article 26 claim in Count VII.