IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **WILLIAM JEFFREY KARN,** | * |
| Plaintiff, | * |
| v. | *   Case No.: GJH-16-3261 |
| | * |
| **PTS OF AMERICA, LLC,** *et al.*, | |
| | * |
| Defendants. | |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff William Karn ("Plaintiff") brings this action against Defendants PTS of America, LLC ("PTS"), its employee, Jorge Santiago, its subsidiary Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport, Inc. ("Brevard"), and Brevard's employees Christopher Cabrera, James Lebron, and Robert King, Sr. ("Defendants"), seeking damages for injuries Plaintiff sustained while Defendants transported him from Maryland to South Carolina in prisoner transport vans in December 2015. In his Amended Complaint, ECF No. 40, the operative pleading, Plaintiff asserts common law claims of negligence and negligent supervision, training, and retention, as well as claims under 42 U.S.C. § 1983 for violations of his constitutional rights by the individual Defendants and by PTS and Brevard. Pending before the Court are a Motion to Dismiss by Defendants Cabrera and King, ECF No. 65, and Defendants' Joint Motion to Bifurcate and Stay Discovery with respect to the § 1983 claim against PTS and Brevard, ECF No. 82. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the following reasons, both motions will be granted.

I.      **BACKGROUND**

The Court has recounted in three prior Memorandum Opinions Plaintiff's disturbing allegations about the conditions and treatment he experienced in Defendants' custody. *See* ECF Nos. 21, 38, 71. In brief, Plaintiff alleges that on or about December 9, 2015, he was arrested in Montgomery County, Maryland for failure to pay timely child support in Horry County, South Carolina. ECF No. 40 ¶ 15. On the evening of December 23, 2015, Defendants Santiago and Lebron arrived at the Montgomery County facility, shackled and handcuffed Plaintiff, and brought him to a van containing ten other prisoners. *Id.* ¶¶ 16, 18, 22, 25. Plaintiff's handcuffs were so tight that he immediately lost feeling in his hands, but Santiago and Lebron ignored his repeated complaints. *Id.* ¶¶ 20–21. The van then departed for South Charleston, West Virginia, where it arrived at approximately 3:00 a.m., before departing for Kentucky at 3:30 a.m. *Id.* ¶ 37.

After two additional stops to pick up and drop off other prisoners, all ten prisoners in the van were dropped off at 11:15 a.m. the next morning at PTS's "hub" facility, a jail in Hopkinsville, Kentucky. *Id.* ¶¶ 33, 37. On December 29, 2015, a different van, driven by Defendants Cabrera and King, picked up Plaintiff and other prisoners in the early morning. *Id.* ¶¶ 35, 37. Over the next two days, the van took Plaintiff through Kentucky, Tennessee, Arkansas, and Tennessee again, before dropping him in Conway, South Carolina in the middle of the night on December 31. *Id.* ¶¶ 37, 66. Plaintiff alleges that his total journey in the two vans was over 2,500 miles long and that Defendants took a circuitous route that passed through multiple states more than once. *Id.* ¶¶ 30–31.

At the center of this action are the conditions in the vans, which Plaintiff alleges were "appalling." *Id.* ¶¶ 22, 28, 42, 74. The prisoner compartments had benches along each side facing a central metal divider, against which the prisoners' knees were pressed. *Id.* ¶ 43. It was

2

impossible for Plaintiff or the other prisoners to sleep in their forced upright position, and because they were not belted or restrained, they were thrown into each other, the divider, and the ceiling as the vans proceeded on their routes. *Id.* ¶¶ 44, 47. Though the vans did not contain bathrooms, Defendants only stopped to allow the prisoners to relieve themselves every six to eight hours. *Id.* ¶¶ 63–65. As a result, the prisoner compartments and the passengers inside, including Plaintiff, became soiled with urine, vomit, and feces. *Id.* ¶¶ 63, 68, 69, 71, 72. Defendants never cleaned the vans while Plaintiff was in their custody. *Id.* ¶¶ 74–76. Defendants also provided the prisoners with little food and water and failed to prevent prisoners from taking food meant for others, leaving Plaintiff dehydrated and with nothing to eat on more than one occasion. *Id.* ¶¶ 49–56.

Plaintiff alleges that he developed sores, boils, rashes, and abrasions from the overly tight shackles and handcuffs and states that he continues to suffer numbness and pain in the fingers of his left hand. *Id.* ¶¶ 43, 58–59. Additionally, Plaintiff alleges that at one point when he was told to exit the van, he was unable to stand properly because his legs had become numb, causing him to fall onto the pavement and injure his shoulder. *Id.* ¶¶ 60–61. While either Santiago or Lebron observed the fall, Plaintiff was simply told to get up and was not provided any assistance or treatment. *Id.* ¶ 62. Plaintiff alleges that he continues to suffer pain from the shoulder injury. *Id.* Finally, Plaintiff asserts that after two prisoners began fighting over medication, Santiago or Lebron indiscriminately pepper sprayed the entire prisoner compartment, burning Plaintiff's eyes, which he could not reach because of his shackles and handcuffs. *Id.* ¶ 78. As a result of his experiences, Plaintiff asserts that he suffers severe emotional distress and will require "treatment into the foreseeable future." *Id.* ¶ 85.

Plaintiff filed a Complaint against Defendant PTS and six "John Doe" employees on September 26, 2016, asserting claims of negligence, intentional infliction of emotional distress, negligent hiring, training, and supervision, false imprisonment, violations of the Maryland Declaration of Rights, and claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. ECF No. 1. PTS moved to dismiss all claims except the negligence claim, for which it filed a partial Answer. ECF Nos. 9, 10. Plaintiff withdrew the false imprisonment claim and one of the § 1983 claims in his Opposition. *See* ECF No. 21 n.1. In a Memorandum Opinion issued on September 19, 2017, the Court dismissed all of the remaining claims except for the Fourteenth Amendment claim against the John Doe employees in their personal capacities. *Id.* at 16–19.[1] The Court stated that Plaintiff would have the opportunity in discovery to identify the individual employees and amend his pleading to add specific allegations against them. *Id.* at 16 n.5.

Plaintiff moved for leave to file an Amended Complaint on April 17, 2018, having identified Santiago, Lebron, Cabrera, and King as the employees who transported him and having learned that  were in fact employees of Brevard rather than PTS. ECF No. 32. The proposed Amended Complaint added the four individual defendants and Brevard and included five claims: negligence against all Defendants, a § 1983 claim against PTS, Brevard, and the individual employees in their official capacities, a § 1983 claim against the individual employees in their individual capacities, a claim for violations of Articles 24 and 26 of the Maryland Declaration of Rights, and a claim of negligent training, supervision, and retention against PTS and Brevard. ECF No. 32-1. Defendants opposed the Motion for Leave. ECF No. 33.

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

On July 26, 2018, the Court issued a Memorandum Opinion granting the Motion for Leave as to all claims except the Maryland Declaration of Rights claim. ECF No. 38. The Amended Complaint was therefore docketed as the operative pleading. ECF No. 40. On August 10, 2018, PTS submitted a motion challenging the venue of the action as improper or in the alternative requesting transfer of venue to the U.S. District Court for the Middle District of Tennessee. ECF No. 49. Brevard and Lebron then filed Motions to Dismiss the Amended Complaint, ECF Nos. 55, 64, and Cabrera and King filed a Motion to Dismiss the Amended Complaint for lack of personal jurisdiction and improper venue, ECF No. 65.[2]

On February 11, 2019, the Court issued a Memorandum Opinion denying all of the pending motions. ECF No. 71. The Court found that the venue of the action was proper because a substantial part of the events at issue occurred in Maryland and that the grounds Defendants offered for transfer were not sufficiently compelling to disturb Plaintiff's choice of forum. *Id.* at 9–11. The Court also rejected Brevard and Lebron's Motions to Dismiss because they offered only arguments that the Court had already found meritless. *Id.* at 11–12 & 12 n.4. Finally, the Court found that it has personal jurisdiction over Lebron because some of the tortious conduct he allegedly engaged in took place in Maryland. *Id.* at 6–7.[3] With respect to Cabrera and King, however, the Court noted that King had filed an affidavit testifying to his lack of activity in the state of Maryland, ECF No. 65-3, and further observed that Plaintiff had not alleged that either Cabrera or King have had contacts with the state. *Id.* at 7. However, the Court granted Plaintiff's request to conduct limited discovery for 60 days on Cabrera and King's activities in Maryland and to show cause why they should not be dismissed for lack of personal jurisdiction. *Id.* at 7, 12.

---

[2] The motions also sought dismissal of the Maryland Declaration of Rights claim, but Plaintiff conceded that that claim was properly disposed of by the Court's previous Order. *See* ECF No. 71 at 2 n.2.
[3] The Court did not address jurisdiction over Santiago, who was apparently never served. See ECF No. 82-1 at 2 n.3.

At the Court's direction, *id.* at 7 n.3, Cabrera on February 13, 2019 filed an affidavit detailing his transport of Plaintiff. ECF Nos. 73, 73-1. Brevard and PTS submitted Answers to the Amended Complaint on February 14, 2019, ECF No. 74, and February 20, 2019, ECF No. 75, respectively. On April 12, 2019, Plaintiff filed a Supplemental Motion in opposition to Cabrera and King's Motion to Dismiss. ECF No. 76. Cabrera and King filed a Reply on April 29, 2019. ECF No. 78. On September 13, 2019, Defendants filed a Motion to Bifurcate and Stay Discovery with respect to Plaintiff's § 1983 claim against PTS and Brevard. ECF No. 82. Plaintiff filed an Opposition on October 11, 2019, ECF No. 86, and Defendants filed a Reply on November 8, 2019, ECF No. 91.

## II.  DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

The Court first considers whether Plaintiff has shown cause why Defendants Cabrera and King should not be dismissed for lack of personal jurisdiction pursuant to the Court's February 11, 2019 Memorandum Opinion. ECF No. 71 at 7, 12; *see* ECF No. 72.

"[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)). In Maryland, the "long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Constitution," *id.* (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)), and thus the statutory inquiry merges with the constitutional inquiry, *id.* (citing *Stover v. O'Connell Assocs.,*

*Inc.*, 84 F.3d 132, 135 (4th Cir. 1996)). "A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)). "Adjudicatory authority is 'specific' when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 923–24 (alterations in original) (quoting *Helicopteros*, 466 U.S. at 414 n.8). In contrast, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (quoting *Int'l Shoe*, 326 U.S. at 317). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924.

In its previous Memorandum Opinion, the Court found that the record before it lacked evidence that Cabrera and King had ever had contacts with the state of Maryland, nor had Plaintiff alleged that they committed any activities in the state giving rise to his claims. ECF No. 71 at 7. Rather, the Amended Complaint alleges that Cabrera and King picked up Plaintiff in Kentucky and had no contact with him in Maryland. ECF No. 40 ¶ 35. Because specific jurisdiction arises only where a defendant's contacts with the forum state provide the basis for the suit, the Court directed that Plaintiff must establish general jurisdiction over Cabrera and

7

King and granted Plaintiff the opportunity to conduct limited discovery on Cabrera and King's activities in Maryland. ECF No. 71 at 7.

Plaintiff offers the materials he has gathered in his Supplemental Motion in support of his Opposition to Cabrera and King's Motion to Dismiss. ECF No. 76 at 2–3. The evidence, which consists of interrogatory responses, includes statements by Cabrera that he believes he has picked up inmates in Maryland for purposes of transportation or extradition, recalls stopping at the Montgomery County Detention Center to provide inmates with restroom breaks, and believes he has driven through every state in the contiguous United States to pick up or drop off prisoners. *Id.* at 2–3 (citing ECF No. 76-1 at 3–4). King merely states that he "likely drove through Maryland and/or made stops in Maryland" in the course of his employment, and that like Cabrera he believes he has driven through every state to pick up or drop off prisoners. *Id.* at 3 (citing ECF No. 76-2 at 4). Both Cabrera and King deny any connection to Maryland in regards to the transportation of the Plaintiff. ECF Nos. 76-1 at 3; 76-2 at 3.

Plaintiff has pointed to no authority indicating that these very limited contacts, which are unrelated to his case, are sufficient to meet the high threshold required for general jurisdiction. "'[O]nly a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in [a] State." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Here, Cabrera and King have each submitted affidavits stating that they are residents of Florida, ECF No. 65-1 ¶ 1; ECF No. 73-1 ¶ 1, ruling out general jurisdiction based on their domicile, "the paradigm forum for the exercise of general jurisdiction" for individuals. *Goodyear Dunlop Tires Operations*, 564 U.S. at 924. While an individual can reside in one state but be domiciled elsewhere, *see Blake v.*

8

*Arana*, No. WQQ-13-2551, 2014 WL 2002446, at *2 (D. Md. May 14, 2014), Plaintiff has not challenged that Cabrera and King here are Florida domiciliaries.

Plaintiff instead offers that because Defendants' employment activities "involved the transport of prisoners through Maryland and the picking up and/or dropping off of prisoners in Maryland," Defendants have each had "continuous and systematic" contact with the state. ECF No. 76 at 5–6 (quoting *Carefirst of Md., Inc.*, 334 F.3d at 397). District courts have split on whether "continuous and systematic" analysis is applicable to individual defendants, or rather whether natural persons are only subject to general jurisdiction in the courts of their state of domicile. *Compare Brown v. Advanced Dig. Sols., LLC*, No. 5:17-CV-00034-RLV-DSC, 2017 WL 3838640, at *4 (W.D.N.C. Sept. 1, 2017) *with Reynolds Foil Inc. v. Pai*, No. 3:09CV657, 2010 WL 1225620, at *6 (E.D. Va. Mar. 25, 2010); *see also Fidelity Nat'l Title Ins. Co., Inc. v. M & R Title, Inc.*, 21 F. Supp. 3d 507, 514 & n.1 (D. Md. 2014) (expressing doubt that continuous and systematic contacts can render a nonresident natural person subject to general jurisdiction in Maryland under Maryland law).

Even if that analysis does apply to individuals, however, Plaintiff has failed to produce evidence that Cabrera's and King's contacts with Maryland are so pervasive as to render them subject to the Court's general jurisdiction. As Judge Grimm of this Court has explained:

> [C]ourts in Maryland have rejected the proposition that general jurisdiction can be based upon occasional travel to Maryland, *see Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 488 (D. Md. 2009), conducting a small portion of a defendant's business in the State, *Robbins v. Yutopian Enters., Inc.*, 202 F. Supp. 2d 426, 429 (D. Md. 2002) (finding that forty-six business transactions in Maryland in less than one year was insufficient to give rise to general personal jurisdiction); *Rossetti v. Esselte–Pendeflex Corp.*, 683 F. Supp. 532, 535 (D. Md. 1988) (finding several million dollars' worth of business insufficient where it was only a small minority of the defendant's total business), or even possession of a license to do business in the State, *Congressional Bank v. Potomac Educ. Found., Inc.*, No. PWG–13–889, 2014 WL 347632 (D. Md. Jan. 30, 2014) (finding that

>a Maryland CPA license was not sufficient to give rise to general personal
>jurisdiction in Maryland).

*Fidelity Nat'l Title Ins. Co., Inc.*, 21 F. Supp. 3d at 515. Cabrera states in his affidavit that his only specific recollection of activity in Maryland is stopping at a detention facility, while King denies any knowledge of trips or travel through Maryland and merely states his belief that he has driven through every state in the contiguous United States to pick up or drop off prisoners. ECF No. 76-1 at 3–4; ECF No. 76-2 at 3–4.

In short, "the links between [Cabrera and King] and Maryland are better viewed as occasional and sporadic" than continuous and systematic, and therefore are insufficient for general jurisdiction. *Fidelity Nat'l Title Ins. Co., Inc.*, 21 F. Supp. 3d at 515. And the Court has already rejected the argument, which Plaintiff again alludes to in his Supplemental Opposition, that jurisdiction attaches to Cabrera and King merely because their employer performs work in Maryland. ECF No. 71 at 7. Accordingly, because Plaintiff has failed to meet his burden to demonstrate personal jurisdiction, Cabrera and King's Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), ECF No. 65, will be granted, and Cabrera and King will be dismissed as Defendants. *Grayson v. Anderson*, 815 F.3d 262, 268 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.3d 673, 676 (4th Cir. 1989)) ("Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge.").

### B. Motion to Bifurcate and Stay

Also pending is Defendants' Joint Motion to Bifurcate and Stay Discovery. ECF No. 82. Defendants request that the Court stay discovery with respect to Plaintiff's claim under 42 U.S.C. § 1983 against PTS and Brevard alleging that their policies, customs, or practices violated his Fourteenth Amendment rights, and that the Court bifurcate that claim from the remaining

claims for trial. ECF No. 82-1 at 6–7; *see* ECF No. 82-8. Defendants refer to this claim as a *Monell* claim, following the Supreme Court's decision in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), holding that "local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights." *Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2017 WL 1862486, at *9 (D. Md. May 8, 2017) (citing *Monell*, 436 U.S. at 690–91). The Court has already determined that PTS and Brevard perform the traditional state function of prisoner transport and are therefore subject to municipal liability under § 1983. ECF No. 21 at 14; ECF No. 71 at 11–12.

Pursuant to Federal Rule of Civil Procedure 42(b), district courts may order a separate trial of "one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" for "convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "In deciding whether to bifurcate, courts have broad discretion." *Shields v. Prince George's Cty.*, No. GJH-15-1736, 2016 WL 4581327, at *3 (D. Md. Sept. 1, 2016) (citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993)). "[A]lthough Rule 42 does not expressly address the bifurcation of discovery, courts have looked to similar factors as those relevant to the bifurcation of trial when determining whether discovery related to the deferred claims should be stayed." *Ziemkiewicz v. R+L Carriers, Inc.*, No. RDB-13-00438, 2013 WL 2299722, at *2 (D. Md. May 24, 2013) (quoting *Cann v. Balt. Cty.*, No. WMN-10-2213, 2011 WL 588343, at *1 (D. Md. Feb. 9, 2011)). Defendants also note Rule 26(d), which provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f),

except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." *See* ECF No. 82-1 at 6.

"Although the determination of whether bifurcation is appropriate is fact specific, the Court often 'orders bifurcation in § 1983 cases where, as here, a plaintiff has asserted claims against individual government employees as well as the municipal entity that employs and supervises those individuals.'" *Shields*, 2016 WL 4581327, at *3 (quoting *Dodson v. Prince George's Cty.*, No. GJH-13-02916, 2014 WL 4799032, at *2 (D. Md. Sept. 25, 2014)). As the Court explained in *Shields v. Prince George's County*:

> Notably, the reason courts frequently order bifurcation in § 1983 cases is that § 1983 cases do not permit vicarious liability under a *respondeat superior theory*; meaning that while the establishment of the actively involved officers' liability must precede a finding of liability of the non-active employer, it does not, without more, establish liability on the part of the employer. *See, e.g.*, *Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (allowing bifurcation in a 1983 case because "to hold the inactive Defendants liable, Plaintiff must first establish at least one active Defendant violated his constitutional rights"). In such cases, if a plaintiff prevails in establishing a claim against one or more of the active defendants, he then "'must establish that the actions of the active Defendants subjecting him to Section 1983 liability were proximately caused by a custom, practice or policy of an inactive Defendant' – the County." *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 540 (D. Md. 1995) (quoting *Marryshow v. Bladensburg*, 139 F.R.D. 318 (D. Md. 1991)). Thus, if a Court bifurcates a § 1983 claim and the officers are determined not to be liable, the resources devoted to discovery and trial of the municipality are conserved.

2016 WL 4581327 at *4; *see also Bost*, 2017 WL 1862486, at *9 ("Courts have consistently found that 'bifurcation of . . . *Monell* supervisory claims from the individual claims is appropriate and often desirable.'" (quoting *Brown v. Bailey*, No. RDB-11-1901, 2012 WL 2188338, at *4 (D. Md. June 13, 2010)).

Defendants make two primary arguments in support of bifurcation and stay of discovery with respect to Plaintiff's *Monell* claim. First, Defendants contend that bifurcation and stay

12

serves judicial economy because PTS and Brevard can only be found liable under § 1983 if a jury first finds that the individual Defendants caused Plaintiff damage by violating his constitutional rights. ECF No. 82-1 at 8. Staying discovery and postponing trial of the *Monell* claim, Defendants maintain, would conserve the parties' and the Court's resources because if the individual Defendants are not found liable under § 1983, trial of the *Monell* claim would be unnecessary, as would the extensive discovery relating to policies, procedures, and customs that Plaintiff has sought in support of the claim. *See id.* at 8–9.

Plaintiff insists that this case is akin to others in which courts have declined to bifurcate *Monell* claims because the plaintiff also brought vicarious liability claims against the municipal defendants. ECF No. 86-1 at 6–8. Plaintiff points to his negligence and negligent training claims, arguing that because PTS and Brevard would be required to defend them at the first of two potential trials, bifurcating the *Monell* claim would not conserve the Court's or the parties' resources. *Id.* at 8. Plaintiff is correct that courts have in some cases denied bifurcation when a plaintiff brings vicarious liability claims against a defendant employer in addition to a *Monell* claim and the court determines that bifurcation would not conserve resources of the parties or the Court. *See Shields*, 2016 WL 4581327, at *4 (collecting cases).

As Defendants respond, however, pretrial litigation of Plaintiff's non-*Monell* claims against PTS and Brevard would not require the same discovery with respect to the companies' practices that the *Monell* claim necessitates. ECF No. 91 at 4. Plaintiff's negligence claim concerns only the conditions of his own transport, *see* ECF No. 40 ¶ 108, and under Maryland law, a negligent training claim primarily involves an employer's knowledge of a specific employee's incompetence or unfitness for a position rather than the employer's broader policies and procedures. *See Jarvis v. Securitas Sec. Servs. USA, Inc.*, No. 11-CV-00654-AW, 2012 WL

527597, at *6 (D. Md. Feb. 16, 2012) (listing the elements of a negligent training, hiring, or supervision claim); *see also Bryant v. Better Bus. Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (noting that for a negligent training and supervision claim, the plaintiff must allege that employer knew or should have known of the employee's "conduct or general character which would have caused a prudent employer in these circumstances to have taken action."). Accordingly, the fact that Plaintiff has brought these additional claims and that PTS and Brevard will be present at the first of two trials does not weigh strongly against bifurcation in this case.

Defendants' other primary argument is that bifurcation would help mitigate the risk of prejudice to the individual Defendants that a single trial could present. ECF No. 82-1 at 10–13. Defendants assert that because proving a *Monell* claim would require Plaintiff to rely on previous incidents and lawsuits against PTS and Brevard, such evidence would likely be inadmissible against the individual Defendants but would be difficult for the jury to selectively disregard. Plaintiff responds that such prejudice can be avoided with curative jury instructions. ECF No. 86-1 at 10. Practically speaking, however, as the Court noted in *Bost v. Wexford Health Sources*, "the reality is that it would be difficult for the jury to compartmentalize" evidence of similar alleged misconduct by other employees in unrelated situations. 2017 WL 1862486 at *13 (collecting cases). This concern thus supports bifurcation. *See Cann*, 2011 WL 588343, at *1 (finding that bifurcation of claims against police officers and the county employing them was warranted to help "[p]revent the prejudice to the individual defendants that might arise if prior incidents of police brutality are introduced as evidence to establish a county custom or policy of tolerating or prescribing the use of excessive force").

In light of these considerations, the Court concludes that Defendants have sufficiently demonstrated that bifurcation of Plaintiff's *Monell* claim and a stay of discovery concerning that

claim are warranted. Taking steps to avoid burdensome and resource-intensive discovery concerning the *Monell* claim, as well as a trial of that claim that could prove unnecessary, would serve the interest of convenience, avoid prejudice to the individual Defendants, and help "expedite and economize" the progress of the litigation. Fed. R. Civ. P. 42(b). Therefore, Defendants' Joint Motion to Bifurcate and Stay Discovery will be granted.

### III.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss filed by Defendants Cabrera and King, ECF No. 65, and Defendants' Joint Motion to Bifurcate and Stay Discovery, ECF No. 82, will be granted. A separate Order shall issue.

Date: <u>May 28, 2020</u>                                          /s/_____
                                                                                  GEORGE J. HAZEL
                                                                                  United States District Judge