IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |
|---|---|
| **WILLIAM JEFFREY KARN,** * | |
| Plaintiff, * | |
| v. * | Case No.: GJH-16-3261 |
| **PTS OF AMERICA, LLC,** *et al.*, * | |
| Defendants. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff William Karn brings this action against Defendants Prisoner Transportation of America, LLC ("PTS"), its employee, Jorge Santiago, its subsidiary, Brevard Extraditions, LLC d/b/a U.S. Prisoner Transport, Inc. ("Brevard"), and Brevard's employees, Christopher Cabrera, James Lebron, and Robert King, Sr., seeking damages for injuries Plaintiff sustained while Defendants transported him from Maryland to South Carolina in prisoner transport vans in December 2015. In his Amended Complaint, ECF No. 40, Plaintiff asserts common law claims of negligence and negligent supervision, training, and retention, as well as claims under 42 U.S.C. § 1983 for violations of his constitutional rights. Pending before the Court is Plaintiff's Motion to Compel, ECF No. 100, and Defendants' Motion to Appoint Expert, ECF No. 106. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). The Court did convene a tele-conference to discuss these issues on July 22, 2020. ECF No. 102. This Opinion and accompanying Order formally resolve the Motion and provides the Court's reasoning. For the following reasons,

1

Plaintiff's Motion to Compel is granted, in part, and Defendants' Motion to Appoint Expert is granted.[1]

## I. BACKGROUND[2]

The Court has recounted Plaintiff's disturbing allegations about the conditions and treatment he experienced in Defendants' custody in several prior Memorandum Opinions. *See* ECF Nos. 21, 38, 71, 97. In brief, Plaintiff alleges that on or about December 9, 2015, he was arrested in Montgomery County, Maryland for failure to pay timely child support in Horry County, South Carolina. ECF No. 40 ¶ 15. On the evening of December 23, 2015, Defendants Santiago and Lebron arrived at the Montgomery County facility, shackled and handcuffed Plaintiff, and brought him to a van containing ten other prisoners. *Id.* ¶¶ 16, 18, 22, 25. Plaintiff was driven through West Virginia and eventually dropped off at 11:15 a.m. the next morning at Defendant PTS's "hub" facility, a jail in Hopkinsville, Kentucky. *Id.* ¶¶ 33, 37. On December 29, 2015, a different van picked up Plaintiff and other prisoners in the early morning. *Id.* ¶¶ 35, 37. Over the next two days, the van took Plaintiff through Kentucky, Tennessee, Arkansas, and Tennessee again, before dropping him in Conway, South Carolina in the middle of the night on December 31, 2015. *Id.* ¶¶ 37, 66. In his Complaint, Plaintiff details the "appalling" treatment and conditions to which he and the other prisoners were subjected throughout the 2,500-mile journey. *Id.* ¶¶ 22, 28, 30, 42, 74.

Plaintiff filed a Complaint against Defendant PTS and six "John Doe" employees on September 26, 2016, asserting claims of negligence; intentional infliction of emotional distress;

---

[1] Defendants filed a supplemental expert designation on November 6, 2020, ECF No. 106, past the deadline stated in the operative Scheduling Order, October 29, 2020, ECF No. 103, 105. Because, pursuant to Local Rule 104.5, discovery materials are not typically filed with the Court, the Clerk's office interpreted the notice as a motion. The Court will grant the "motion," which is unopposed.
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

negligent hiring, training, and supervision; false imprisonment; violations of the Maryland Declaration of Rights; and claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. ECF No. 1. On July 26, 2018, the Court issued a Memorandum Opinion granting in part Plaintiff's Motion for Leave to File an Amended Complaint, ECF No. 38, which was then docketed as the operative pleading, ECF No. 40. The Amended Complaint added four individual defendants and Brevard and included four claims: negligence against all Defendants; a § 1983 claim against PTS, Brevard, and the individual employees in their official capacities; a § 1983 claim against the individual employees in their individual capacities; and a claim of negligent training, supervision, and retention against PTS and Brevard. *Id.* Two of the defendants were later dismissed from the action, and Count II—the § 1983 claim against PTS, Brevard, and the employees in their official capacities—was bifurcated from the remaining claims. ECF No. 98.

In the course of discovery, Plaintiff has sought identifying information about the other prisoners who were in the vans with him in order to locate them and obtain their testimony. ECF No. 100-1 at 1. Defendant PTS's corporate representative testified on February 6, 2018, that the guards that transport the prisoners would "have documents for each inmate that they have on board," which "would consist of the prisoner status report package, which has a prisoner receipt." *Id.* at 28. The prisoner receipts include personal information, namely, the individuals' dates of birth and social security numbers, that Plaintiff could use to locate them. *See id.* at 31–37.

On July 18, 2019, Plaintiff served his Second Set of Requests for Production of Documents on Defendant PTS, requesting "any documents, files, or prisoner report packets maintained by PTS concerning the other inmates who were transported at any time with Plaintiff

. . . and all records related to their pick-up, transportation, discharge, and their personal identifying information, including date of birth and address." ECF No. 100-1 at 16. Defendant PTS responded to the document requests on October 7, 2019,[3] stating:

> Defendant objects to the Request on the basis that it seeks documentation not reasonably calculated to lead to the discovery of admissible evidence insofar as the Request seeks personal injury information as well as medical information, potentially subject to HIPAA, of non-parties, and that such documentation is not discoverable, as it is both confidential and irrelevant to the subject matter of this case defendant further objects on the basis that the request information is not proportional to the needs of this case. Subject to, without waiving these objections, see documents previous produced in discovery as PTS 237 through 264 and PTS 430-436.

*Id.* at 16–17.

Plaintiff also sought information about the prisoners with whom he had travelled in his Second Set of Interrogatories, which requested that Defendant PTS "[i]dentify all prisoners who were present at any time in the van during its transport of Plaintiff, including the prisoner's full name, address, date of birth, phone number, social security number, location where PTS picked the prisoner up, the date PTS picked the prisoner up, the location where PTS dropped the prisoner off, the date PTS dropped the prisoner off, and the prisoner's final transportation destination." *Id.* at 22. In response, Defendant PTS stated:

> Defendant objects on the basis that the Interrogatory seeks personal identifying information as well as medical information potentially subject to HIPAA of non-parties, and that such information is not discoverable, as it is both confidential and irrelevant to the subject matter of this case. Furthermore, it requests information that is not proportional to the needs of this case. Subject to, and without waiving these objections, responsive information to the Interrogatory regarding the identity of the individuals is located in documents PTS has produced to Plaintiff in the course of discovery. Specifically see documents PTS 237-264 and PTS 430-436.

---

[3] Defendant PTS states in its Response that "Plaintiff's Motion to Compel addresses two different sets of discovery responses that were served on Plaintiff by PTS, the first being served on December 17, 2017 and the second on July 18, 2019." ECF No. 1002- at 2. However, the exhibits attached by Plaintiff and referenced by Defendant show that the discovery requests at issue were part of the second set, served on July 18, 2019, not the first set served in 2017. *See* ECF No. 100-1 at 15–19, 21–25, 39.

*Id.* at 22–23. The first set of cited documents referenced in both of Defendant PTS's responses, according to Plaintiff's motion, were previously-produced logs of the pick-up and drop-off dates, times, and locations of each individual who was transported from December 19, 2015 to January 3, 2016 on the two vans at issue. ECF No. 100-1 at 4. However, they were not the requested prisoner report packets, and the only identifying information provided in the logs was the individuals' names. *Id.* The second set of documents consisted of prisoner receipts for seven of the nineteen prisoners who were with Plaintiff, but the dates of birth and social security numbers were redacted. *Id.* at 4–5.

On January 22, 2020, Plaintiff sent Defendant PTS a letter concerning this and several other deficiencies in its discovery responses. *Id.* at 39–44. Defendant PTS responded on February 28, 2020, stating that it "located some additional documentation pertaining to the prisoners for which we provided the prior documents, as well as documentation for one additional prisoner," and those documents were produced. *Id.* at 47. The "additional documentation" consisted of "prisoner property receipts" for six prisoners, none of which listed any personal identifying information such as addresses, phone numbers, dates of birth, or social security numbers that could be used to locate them. *Id.* at 51–61, 63. The production also included a prisoner receipt for an additional individual with the social security number, but not the date of birth, redacted. *Id.* at 62. Defendant PTS further stated that "[t]hese are the only prisoners for whom relevant prisoner documents are currently in the possession of PTS." *Id.* at 47. Defendant PTS continued to refuse to produce non-redacted versions of the prisoner receipts, taking the position that the protective order was insufficient because "the confidential information at issue in the prisoner documents is not PTS's confidential information, but specifically the personal identifying

information of third parties who are not parties to this case, nor are they related to any party of this case." *Id.* at 47.[4]

On May 29, 2020, Plaintiff served on Defendant PTS a Motion to Compel the production of the requested prisoner packets, including unredacted prisoner receipts. ECF No. 100-1. Defendant PTS served its Response opposing Plaintiff's motion on Plaintiff on June 12, 2020. ECF No. 100-2. Plaintiff served its reply on June 26, 2020. ECF No. 100-3. Plaintiff filed all three documents under seal on July 8, 2020, ECF No. 100, along with a Consent Motion to File Under Seal the briefing related to the Motion to Compel, ECF No. 101, which was granted, ECF No. 105.

## II.  STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" "Relevancy is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Carey v. Berisford Metals Corp.*, 1991 WL 44843, at *7 (S.D.N.Y. Mar. 28, 1991) (quotations and citation omitted). "Discovery is of broader scope than admissibility, and discovery may be had of inadmissible matters." *King v. Conde*, 121 F.R.D. 180, 194 (E.D.N.Y. 1988).

Federal Rule of Civil Procedure 37 provides that when a party fails to respond to discovery, the party seeking discovery can move for an order compelling production. Fed. R. Civ. P. 37(a)(3)(B). "Whether to grant or deny a motion to compel is generally left within a

---

[4] On December 6, 2017, Plaintiff and Defendant PTS stipulated to an order and agreement regarding the confidentiality of discovery material. ECF No. 26. The Court approved and entered the Stipulated Order on December 7, 2017. ECF No. 27. Paragraph 3 of the Stipulated Order provides that "[n]o information may be withheld from discovery on the ground that the material to be disclosed requires protection greater than that afforded by paragraph (1) of this Order [providing for the designation of confidential materials] unless the party claiming a need for greater protection moves for an order providing such special protection." *Id.* ¶ 3.

district court's broad discretion." *Williams v. Corelogic Rental Prop. Sols., LLC*, No. CV PX 16-58, 2016 WL 6277675, at *2 (D. Md. Oct. 26, 2016); *see also LaRouche v. Nat'l Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.").

### III. DISCUSSION

#### A. Compliance with Local Rule 104.8

According to Rule 104.8(a) of the Local Rules for the United States District Court for the District of Maryland:

> If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them and has been unable to resolve informally (by oral or written communications) any disputes with the responding party, that party shall serve a motion to compel within thirty (30) days of the party's receipt of the response. The memorandum in support of the motion shall set forth, as to each response to which the motion is directed, the discovery request, the response thereto, and the asserted basis for the insufficiency of the response. . . .

Plaintiff received the discovery responses at issue on October 7, 2019, *see* ECF No. 100-1 at 19, 25, but did not raise the alleged deficiencies with Defendant PTS until January 22, 2020, when Plaintiff sent a letter regarding its discovery requests, *id.* at 39–44, and did not serve the Motion to Compel until May 29, 2020, ECF No. 100-1 at 13. Defendant PTS therefore argues that Plaintiff's Motion to Compel should be denied as untimely. ECF No. 100-2 at 4–6.

"Failure to comply with Local Rule 104.8 does not *per se* require dismissal of a party's motion to compel." *Chavis v. Plumbers & Steamfitters Local 486 Pension Plan*, No. 1:17-CV-02729-ELH, 2019 WL 4879015, at *4 (D. Md. Oct. 3, 2019). Instead, courts look to whether the

non-moving party has suffered prejudice as a result of the delay. *See id.*; *see also Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 497 (D. Md. 2000) ("[A]n absolute rule requiring [dismissal] without first determining whether the opposing party would suffer any real prejudice if the motion is granted would be too harsh a construction of the local rule.").

Defendant PTS provided discovery responses more than a month after they were due. *See* Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."); Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under Rule 26(d)(2)—within 30 days after the parties' first Rule 26(f) conference."). According to Plaintiff, Plaintiff's counsel emailed Defendant PTS regarding the missing discovery responses on September 5, 2019, but did not receive a response. *See* ECF No. 100-3 at 3, 11. Later, when Plaintiff raised the alleged deficiencies to Defendant PTS in a letter sent January 22, 2020, Defendant PTS did not respond for more than one month, sending a reply and providing additional documents on February 28, 2020. ECF No. 100-1 at 46–49. Discovery in this matter is ongoing,[5] and a trial date has not been set. *Cf. Webb v. Green Tree Servicing LLC*, No. CIV. ELH-11-2105, 2012 WL 3139551, at *1 (D. Md. July 27, 2012) (emphasizing that the plaintiff's belated motion was "especially troubling because if granted, it would disrupt the Scheduling Order by extending the discovery deadline" and finding that reason alone warrants denial). Because, under these circumstances, the Court does not find Defendant PTS has been prejudiced by Plaintiff's late motion, the Court will not deny the motion on the basis of its failure to comply with Rule 104.8.

---

[5] According to the Scheduling Order, the current discovery deadline is March 24, 2021. ECF Nos. 103, 105.


**B. Redaction of Non-Party Private Information**

Proceeding to the merits of Plaintiff's motion, the parties contest whether the broad scope of discovery in this case includes the birth dates, social security numbers, and other identifying information of non-party prisoners. Courts have routinely ordered plaintiffs to disclose their social security numbers when that information has some relevance to a claim, or defense, in the litigation. *See Breslin v. Dickinson Twp.*, No. 1:09-CV-1396, 2011 WL 1900448, at *4 (M.D. Pa. May 19, 2011) (listing cases); *see also Gober v. City of Leesburg*, 197 F.R.D. 519, 521 n. 2 (M.D. Fla. 2000) ("[T]he discovery of background information such as name, address, telephone number, date of birth, driver's license number, and social security number is considered routine information in almost all civil discovery matters."). However, non-parties' information presents a closer question.

In the case of non-parties, "because individuals have a strong privacy interest in their Social Security numbers, such numbers should generally not be disclosed absent a showing of particularized need." *Soto v. ECC Indus., Inc.*, No. CV 2005-4764 BMC, 2006 WL 2375465, at *1 (E.D.N.Y. Aug. 14, 2006) (citing *Entral Grp. Int'l, LLC v. YHCL Vision Corp.*, 436 F. Supp. 2d 404, 406 (E.D.N.Y. 2006)). In addition, courts have found other personal information of non-parties, including home address and family information, may also be protected from disclosures. *See Andrews v. Cruz*, No. 04 CIV. 0566(PAC) (RLE), 2006 WL 1984650, at *3 (S.D.N.Y. July 14, 2006) (allowing redaction of that information).

Where, as here, non-parties' birth dates and social security numbers are sought for the purposes of locating them for testimony relevant to the case, and the party has been unable to locate them without that information, courts have allowed the information to be disclosed under the terms of a protective order ensuring it is not improperly disseminated. *See, e.g.*, *Gibbs v. Am.*

*Sch. for the Deaf*, No. 3:05CV563(MRK), 2007 WL 1079992, at *2 (D. Conn. Apr. 4, 2007) ("[T]he Court will order Defendant to disclose to counsel for Plaintiff and his investigator [non-party's] social security number and date of birth. However, they may use such information solely for purposes of locating [the non-party]."); *NBA Properties, Inc. v. Untertainment Records, LLC*, No. 99 CIV. 2933 (HB)(DF), 1999 WL 1103006, at *1 (S.D.N.Y. Dec. 6, 1999) (requiring disclosure of non-party's social security number where it "may enable plaintiff to locate" the non-party and "his testimony may provide information relevant to the plaintiff's claims"); *cf. Goodman v. City of New York*, No. 03 CIV. 2497 (GEL), 2004 WL 1661105, at *2 (S.D.N.Y. July 23, 2004) (permitting non-party deponents to be asked about their birth dates and social security numbers but requiring a confidentiality stipulation as a condition of disclosure).

Plaintiff explains that there were at least 19 other individuals who were in a transport van at some point along the journey from Maryland to South Carolina and who may have information about that journey relevant to this case. ECF No. 100-1 at 10. Plaintiff is aware of the names of those individuals through the activity logs and transport logs provided in discovery by Defendant PTS, but for some of the prisoners, no middle name or even middle initial is listed. *Id.* Plaintiff has been unable to locate some of the prisoners with more common names. *Id.* Not all of the prisoner receipts have phone numbers, and none have addresses. *Id.* at 11. Plaintiff therefore argues additional identifying information is necessary in order to locate witnesses for this case. *Id.* at 10. Any information disclosed to Plaintiff would be subject to the protections of the Protective Order in this case. *Cf, e.g.*, *Babbitt v. Albertson's, Inc.*, No. C-92-1883 SBA (PJH), 1992 WL 605652, at *5 (N.D. Cal. Nov. 30, 1992) ("Any concerns for the privacy of the individuals who originally filed the claims may be addressed through an appropriately crafted protective order limiting access to the parties and their attorneys."). Plaintiff's request is

overbroad to the extent it encompasses the private information of individuals that it has been able to identify and locate using the information already available. *See* ECF No. 100-1 at 10 (noting that Plaintiff has addresses for some of the prisoners). However, with respect to those individuals that Plaintiff has been unable to locate, the Court finds Plaintiff has sufficiently shown a particularized need for the disclosure of these non-parties' identifying information outweighing their privacy interests.

The cases cited by Defendant are not to the contrary. *Keith H. v. Long Beach Unified Sch. Dist.*, involved the redaction of social security numbers and birth dates belonging to minors, which implicated heightened privacy interests. 228 F.R.D. 652, 657–58 (C.D. Cal. 2005). Additionally, the moving party did not show a particularized need to access that information. *See id. Jackson v. Papa John's USA, Inc.*, addressed whether a plaintiff could compel the production of social security numbers of absent members of a class. 2009 U.S. Dist. LEXIS 31887, *1 (N.D. Ohio April 15, 2009). The court conducted a balancing analysis,[6] and ultimately concluded, based on the specific circumstances, that the benefit of 14 or 15 more individuals opting in to the litigation, out of 1,841 absent class members, was not worth the costs to the absent class members' privacy and the delay that would result from a further extension of the notice period. *Id.* at *9–13. In other words, the court weighed the costs and benefits of disclosure and found disclosure was not sufficiently warranted on those specific facts; this Court conducts a similar analysis here and comes to a different conclusion given the circumstances of this case. *Cf. Minter v. Wells Fargo Bank, N.A.,* 283 F.R.D. 268, 275 (D. Md. 2012) (ordering the defendants to

---

[6] The court specifically examined: "the (1) the interest of opt-in members' in cost reductions to be achieved by additional notice; (2) the interest of the judicial system in dealing with the common questions of fact and law in a single action; (3) the interest of this Court and the current parties in avoiding undue delays; (4) the interest of previously unreachable class members in having the opportunity to participate in this litigation and reduce costs; and (5) the interests of previously unreachable class members in having their social security numbers kept private." 2009 U.S. Dist. LEXIS 31887, *8–9 (N.D. Ohio April 15, 2009).

"produce the social security numbers and telephone numbers for potential class members as necessary to assist class counsel in providing the best notice practicable"). Finally, *Sollitt v. Keycorp* does not support Defendant's argument. No. 1:09-CV-43, 2009 WL 485031, at *1 (N.D. Ohio Feb. 26, 2009). In that case, the court denied the defendant's motion for a protective order but required the plaintiff to treat as confidential any social security numbers of the defendant's current and former employees included in produced documents. *Id.* at *4. In other words, the issue was not whether the social security numbers could be produced unredacted—they were—but instead whether the plaintiff could disseminate them. *Id.*

Nor does federal or state law prohibit Defendant PTS from sharing this information. Tenn. Code Ann. § 47-18-2110, cited by Defendant, requires persons and businesses to "make reasonable efforts to protect that social security number from disclosure to the public." Tenn. Code Ann. § 47-18-2110(a). The statute also states, "[t]he requirements established pursuant to subsection (a) shall not apply: (1) To the disclosure of a federal social security number by an entity so long as the disclosure is for a legitimate business or governmental purpose and occurs pursuant to the terms of a business or governmental contract or other lawful legal obligation[.]" *Id.* § 47-18-2110(b). Here, Defendant PTS would be complying with a "lawful legal obligation" and the information would not be disclosed to the public. *Cf. Gibbs v. Am. Sch. for the Deaf*, No. 3:05CV563(MRK), 2007 WL 1079992, at *2 (D. Conn. Apr. 4, 2007) (finding the disclosure of employees' social security numbers did not violate Connecticut state law when done pursuant to a judicial order). Defendant PTS has not identified other state laws which would prevent the disclosure of the requested information. With respect to federal law, Defendants point to 42 U.S.C. § 405(c)(2)(C)(viii)(I) to argue that federal law "recognizes the private nature of social security numbers and provides that social security numbers and related records shall be

confidential and not disclosed." ECF No. 100-2 at 7. While under federal statutory and common law, social security numbers are doubtlessly private information that should receive some degree of heightened protection, Defendant has not explained how this law, specific to social security numbers obtained by federal or state "authorized persons" pursuant to certain federal laws, *see* 42 U.S.C. § 405(c)(2)(C)(viii)(III), limits the disclosure of social security numbers under the protective order in this case.

Therefore, the Court grants Plaintiff's Motion to Compel unredacted copies of the prisoner receipts and related documents with respect to the individuals that Plaintiff has been unable to locate using the information already available. To the extent not already accomplished, Plaintiff is instructed to provide Defendant PTS a list of those individuals, and Defendant PTS is ordered to provide the unredacted documents only for those individuals. The parties are further cautioned that the information should be designated "Confidential" and should only be used to locate the individuals who traveled with Plaintiff in the transport from Maryland to South Carolina.

### C. Production of Additional Documents

Although Defendant PTS produced redacted prisoner receipts for nine of the prisoners who were in transit with Plaintiff, Defendant PTS did not produce prisoner receipts, prisoner packets, or other similar documents for the remaining individuals.[7] *See* ECF No. 100-1 at 40; ECF No. 100-2 at 9. Plaintiff therefore requests that Defendant PTS be compelled to produce prisoner packets, including prisoner receipts, for these prisoners. ECF No. 100-1 at 12.

---

[7] Although Plaintiff's deficiency letter listed nine individuals for whom the requested information had not been produced, ECF No. 100-1 at 40, and that is the figure both parties references in their briefing, ECF No. 100-2 at 9; ECF No. 100-3 at 8, it appears that two individuals from its original request were not included in that list, *see* ECF No. 100-1 at 39–40, meaning Defendant PTS has actually failed to produce documents related to 11 individuals.

Defendant PTS states that, "despite searches, PTS did not locate documents related to these nine individuals and thus, cannot produce what is does not have." ECF No. 100-2 at 9.

Requests for production only govern items in a party's possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1). "The Court cannot compel Defendant to produce documents that it does not have." *Leeper v. A.J. Lines, Inc*., No. 2:15-CV-414-WCL-PRC, 2016 WL 6610833, at *16 (N.D. Ind. Nov. 9, 2016). However, if Plaintiff can show that Defendant had a duty to preserve those documents, but failed to do so, Plaintiff may move for sanctions on the basis of spoliation. *See Goodman v. Praxair Servs., Inc.,* 632 F. Supp. 2d 494, 505 (D. Md. 2009).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel, ECF No. 100, is granted, in part. Defendants' Motion to Appoint Expert, ECF No. 106, is granted. A separate Order shall issue.


Dated: January 29, 2021                    /s/
                                           GEORGE J. HAZEL
                                           United States District Judge